## DE BENQUE v. UNITED STATES.
### No. 6617.

United States Court of Appeals for the District of Columbia.
Decided May 11, 1936.

James J. Laughlin, of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., and John J. Wilson, Asst. U. S. Atty., both of Washington, D.C.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from a judgment of the Supreme Court of the District of Columbia entered December 20, 1935, sentencing the appellant (hereinafter referred to as the defendant) to fifteen months in the penitentiary. The question in the case is as to the validity of this sentence.

The facts are as follows: On November 27, 1933, the defendant, having been convicted of the crime of grand larceny, was sentenced to be imprisoned for a period of two to four years on each of three counts of an indictment, the sentences to run concurrently and to take effect from the date of imposition.[1] These sentences were imposed under the terms of the "Act to establish a Board of Indeterminate Sentence and Parole for the District of Columbia and to determine its functions, and for other purposes," approved July 15, 1932, 47 Stat.

---

[1] The defendant was indicted with other. The larceny of which the two were convicted totaled $5,544.

696.[2] But the felonies of which the defendant had been convicted were all committed prior to July 15, 1932, and under Section 7 of the Act just referred to (D.C.Code Supp. I, 1933, T. 6, § 457)· it was provided that:

"for any felony committed before this Act takes effect [July 15, 1932], the pen-

---

[2] The text of the Act is as follows:

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That there shall be established in the District of Columbia a Board of Indeterminate Sentence and Parole for the penal institutions for said District, to consist of three members, residents of said District, to be appointed by the Commissioners of the District of Columbia, none of which members shall be officially connected with the prison administration in any other capacity; that of the three members first appointed after the passage of this Act, one shall be appointed for three years, one for five years, and one for seven years; thereafter all appointments, except such as may be made for the remainder of unexpired terms, shall be for the term of seven years. It shall be the duty of the Board of Indeterminate Sentence and Parole to examine into the physical, mental, and moral records of the prisoners committed to the penal institutions of the District; receive reports of wardens and other officials, including the psychiatrist; recommend the treatment which, in their opinion, is most conducive to the prisoners' reformation; and provide for a system of determining the proper time of release and the rehabilitation of the ex-prisoner in the community. The board shall adopt rules and regulations for its procedure, subject to the approval of the Commissioners of [the] District of Columbia. The members of the board shall serve without compensation: *Provided,* That actual and necessary traveling expenses of the members of the board, incurred in the performance of duties under this Act, shall be allowed and paid as herein provided.

Sec. 2. The Board of Indeterminate Sentence and Parole shall, subject to the approval of the Commissioners of the District of Columbia, appoint parole officers, in such number as shall be approved by Congress from time to time, for the penal institutions of said District, one of whom shall also act as the clerk of said· Board of Indeterminate Sentence and Parole. It shall be the duty of such officers, subject to the discretion and control of said board, to perform such duties and exercise such authority as the said board may direct. Salaries and the actual and necessary traveling expenses of each such parole officer shall be paid out of the appropriation for the maintenance of the penal institution to which he is as-

signed and receive compensation in accordance with the rates established by the Personnel Classification Act of 1923. (All other necessary expenses incurred in the administration of this Act shall be paid out of the appropriations for the penal institutions from which prisoners are paroled, and such appropriations are hereby made available therefor.)

Sec. 3. That hereafter, in imposing sentence on a person convicted in the District of Columbia of a felony, the justice or judge of the court imposing such sentence shall sentence the person for a maximum period, not exceeding the maximum fixed by law, and for a minimum period not exceeding one-fifth of the maximum period fixed by law, and any person so convicted and sentenced may be released on parole as herein provided at any time after having served the minimum sentence: *Provided, however,* That this Act shall not abrogate the power of the justice or judge to sentence a convicted prisoner to the death penalty as now or hereafter may be provided by law: *Provided further,* That where a justice or a judge of the Supreme Court of the District of Columbia has imposed a life sentence on the prisoner convicted in the District of Columbia, said prisoner serving such sentence shall be eligible to parole as herein provided at any time after having served fifteen years of his life's sentence.

Sec. 4. That whenever, within the limitations of section 3 of this Act, it shall appear to the Board of Indeterminate Sentence and Parole, from the reports of the prisoner's work and conduct which may be received in accordance with the rules and regulations prescribed, and from the study and examination made by the board itself, that any prisoner serving an indeterminate sentence is fitted by his training for release, that there is a reasonable probability that such a prisoner will live and remain at liberty without violating the law, and in the opinion of the board such release is not incompatible with the welfare of society, said Board of Indeterminate Sentence and Parole may, in its discretion, authorize the release of such prisoner on parole, and he shall be allowed to go on parole, outside of said prison, and in the discretion of the board to return to his home upon such terms and conditions, including personal reports from said paroled prisoner, as said Board of Indeterminate Sentence and Parole shall prescribe, and to remain,

alty, sentence, or forfeiture provided by law for such felony at the time such felony was committed shall remain in full force and effect and shall be imposed, notwithstanding this Act [sections 451–458 of this title]."

The defendant entered at once upon the service of the sentences imposed upon

while on parole, in the legal custody and under the control of the superintendent of the institution from which the prisoner may have been paroled, until the expiration of the maximum of the term or terms specified in his sentence, less such good-time allowance as is, or may hereinafter be, provided by law; and the said board shall in every parole fix the limits of the residence of such person paroled, which limits, however, may be thereafter changed in the discretion of the board.

Sec. 5. If said Board of Indeterminate Sentence and Parole, or any member thereof, shall have reliable information that a prisoner has violated his parole, said board, or any member thereof, at any time within the term or terms of the prisoner's sentence, may issue a warrant to any officer hereinafter authorized to execute the same for the retaking of such prisoner. Any officer of the penal institution from which such prisoner shall have been paroled or any Federal officer authorized to serve criminal process within the United States to whom such warrant shall be delivered is authorized and required to execute such warrant by taking such prisoner and returning him to said penal institution.

Sec. 6. At the next meeting of the Board of Indeterminate Sentence and Parole held after the issuing of a warrant for the retaking of any paroled prisoner, said board shall be notified thereof, and if such prisoner shall have been returned to the institution, he shall be given an opportunity to appear before said Board of Indeterminate Sentence and Parole, and the said board may then, or at any time in its discretion, revoke the order and terminate such parole or modify the terms and conditions thereof and if such order of parole be revoked and the parole so terminated the said prisoner shall serve the remainder of the sentence originally imposed, the unexpired term of imprisonment of any such prisoner to begin to run from the date he is returned to the institution, and time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced: *Provided*, That the parole board, at its discretion, may afterwards grant a new parole to said prisoner, in the event said board should deem it advisable.

Sec. 7. That all Acts or parts of Acts inconsistent with the provisions of the Act are hereby repealed: *Provided, how-*

*ever*, That for any felony committed before this Act takes effect, the penalty, sentence, or forfeiture provided by law for such felony at the time such felony was committed shall remain in full force and effect and shall be imposed, notwithstanding this Act.

Sec. 8. Any person confined in a penal institution of the District of Columbia who escapes or attempts to escape therefrom, or any person who procures, advises, connives at, aids, or assists in such escape, or conceals any such prisoner after such escape, shall be guilty of an offense and upon conviction thereof in any court of the United States shall be punished by imprisonment for not more than five years, said sentence to begin, if the convicted person be an escaped prisoner, upon the expiration of the original sentence.

Sec. 9. Upon the appointment of the members of said board, the powers of the existing parole board over prisoners confined in the penal institutions of the District of Columbia shall cease and determine and all the powers of said existing parole board under the authority of the Act of Congress approved June 25, 1910, entitled "An Act to parole United States prisoners, and for other purposes," as amended, over said prisoners confined in the penal institutions of the District of Columbia shall be transferred to and vested in said Board of Indeterminate Sentence and Parole: *Provided, however*, That in the case of a prisoner convicted of felony committed prior to the effective date of this Act, and in the case of any prisoner convicted of misdemeanor when the aggregate sentence imposed is in excess of one year, said Board of Indeterminate Sentence and Parole may parole said prisoner, under the provisions of this Act, after said prisoner has served one-fifth of the sentence imposed. 47 Stat. 696–699 (D.C.Code Supp. I, 1933, T. 6, §§ 137, 451–458).

Sec. 10. The Board of Parole created by the Act of Congress entitled "An Act to amend an Act providing for the parole of United States prisoners, approved June 25, 1910, as amended," approved May 13, 1930, shall have and exercise the same power and authority over prisoners convicted in the District of Columbia of crimes against the United States and now or hereafter confined in any United States penitentiary or prison (other than the penal institutions of the District of Columbia) as is vested in the Board of

her, being confined in the District of Columbia Workhouse at Occoquan, Virginia; but on or about the nineteenth day of December, 1935, after she had served approximately twenty-five months, she filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Virginia. A writ was issued and the defendant was, upon the same day, after a hearing, discharged upon the ground that there should have been imposed upon her the sentences provided by law for the felonies in question at the time they were committed, not sentences under the indeterminate sentence law. The defendant was, however, remanded to the custody of the United States marshal for the District of Columbia to the end that the Supreme Court of the District of Columbia might pronounce judgment and sentence upon her in accordance with law; and on December 20, 1935, she was brought before that court, which set aside and held for naught the prior sentences, and imposed upon the defendant a new sentence of imprisonment for a period of fifteen months on each of the three counts of the indictment referred to, such sentences to run concurrently and to take effect from the date of imposition.[3] The action of the court taken on December 20, 1935, was within a term of court later than that during which the original sentences were imposed. It is conceded by the Government that the original sentences ought not have been imposed under the indeterminate sentence law.

By the assignment of errors two questions are presented: 1. The term having passed, had the trial court authority to resentence the defendant? 2. If so, ought the new sentences have been imposed so as to commence to run as of the date of the original sentences?

1. It is the general rule that a court loses jurisdiction of a case at the end of the term at which judgment was entered unless it expressly carries the disposition of the case over to a subsequent term. United States v. Mayer, 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129; United States v. Pile, 130 U.S. 280, 9 S.Ct. 523, 32 L.Ed. 904; Fine v. United States (C.C.A.) 67 F.(2d) 591; Ex parte Singer (C.C.A.) 284 F. 60. If, however, the judgment was void, the general rule does not apply. Bryant v. United States (C.C.A.) 214 F. 51; Hammers v. United States (C.C.A.) 279 F. 265. In the latter case the defendant was sentenced, in each of twelve cases under the Harrison Anti-Narcotic Act (see 26 U.S.C.A. § 1040 et seq.), to the United States penitentiary at Atlanta, Georgia, for a term of less than one year. Thereafter, upon habeas corpus, he was discharged and remanded, and at a subsequent term was resentenced to six months in a county jail, all upon the theory that the original sentences were void since the law did not authorize sentence to imprisonment in a penitentiary for less than one year. A principal contention of the defendant was that he was not subject to be resentenced at a term subsequent to the one at which he was convicted. The court, after stating that the sentences originally imposed were invalid, said:

"The imposition of a void sentence is not an obstacle to the assumption by the court which imposed it of jurisdiction of the convict, in order that a legal sentence may be imposed. Where there is a conviction, accompanied by a void sentence, the court's jurisdiction of the case for the purpose of imposing a lawful sentence is not lost by the expiration of the term at which the void sentence was imposed. The case is to be regarded as pending until it is finally disposed of by the imposition of a lawful sentence.

"If the invalidity of the sentences had been directly attacked, clearly jurisdiction would have been retained after the expiration of the trial term. In sound reason the case should not be different where the attack is collateral. One duly convicted, but not sentenced as authorized by law, cannot defeat the court's incompletely exercised jurisdiction over him by attacking a void sentence in habeas corpus proceedings instituted after the adjournment of the term at which such void ac-

---

Indeterminate Sentence and Parole over prisoners confined in the penal institutions of the District of Columbia. 48 Stat. 880.*

* This section was not in effect at the time of the imposition of the indeterminate sentences in this case, but was at the time of the imposition of the second sentences hereinafter referred to. It became effective June 5, 1934.

[3] The maximum sentence provided for under the statute penalizing grand larceny is ten years (31 Stat. 1324, § 826 [D.C. Code 1929, T. 6, § 60]).

tion was taken. [Citing Bryant v. United States, supra]" 279 F. 265, at pages 266–267. ·

The theory seems to be that where the original judgment is void, it, in form of law, accomplished nothing, there was no final disposition of the case, and the court's power was therefore unexercised; and, in point of substance, the defendant, having sought release on the theory that the judgment was void, cannot turn about and escape due punishment merely because the term has passed, that is to say, the defendant cannot assert the judgment void to defeat it, and then assert it merely voidable to defeat a new judgment.

■ It is further definitely settled in the Federal courts that where in a criminal case a sentence is not imposed in strict accordance with the penalty statute, the sentence is void in a fundamental sense. This rule, on first thought, appears to be in conflict with the proposition laid down in civil cases that a court has jurisdiction in the sense that its erroneous action is voidable only, not void, when the parties are properly before it, the proceeding is of a kind or 'class which the court is authorized to adjudicate, and the claim set forth for the court's action is not·obviously frivolous. Cooper v. Reynolds, 10 Wall. 308, 19 L.Ed. 931; Binderup v. Pathe Exchange, 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308; Brougham v. Oceanic Steam Navigation Co. (C.C.A.) 205 F. 857. But in criminal cases the theory apparently is that the penalty statutes are themselves jurisdictional, that is to say, that they delimit the very power of the court. But whatever the theory, there can be no question about the rule. In In re Mills, 135 U.S. 263, 10 S.Ct. 762, 34 L.Ed. 107, where the defendant was sentenced, under each of two indictments, to one year in a penitentiary, when the statute permitted such imprisonment only for sentences longer than a year, the Supreme Court held the sentences void. Speaking through Mr. Justice Harlan, the Court said:

"The court below was without jurisdiction to pass any such sentences, and the orders directing the sentences of imprisonment to be executed in a penitentiary are void. This is not a case of mere error, but one in which the court below transcended its powers." [Authorities cited] 135 U.S. 263, at page 270, 10 S.Ct. 762, 764, 34 L.Ed. 107.

Again, in In re Bonner, 151 U.S. 242, 14 S.Ct. 323, 325, 38 L.Ed. 149, where a similar sentence was for the same reason held void, the Court, speaking through Mr. Justice Field, said: "in all cases where life or liberty is affected by its proceedings, the court must keep strictly within the limits of the law authorizing it to take jurisdiction and to try the case and to render judgment. It cannot pass beyond those limits in any essential requirement in either stage of these proceedings * * *. From a somewhat extended examination of the authorities we will venture to state some rule applicable to all of them, by which the jurisdiction as to any particular judgment of the court in such cases may be determined. It is plain that such court has jurisdiction to render a particular· judgment only when the offence charged is within the class of offences placed by the law under its jurisdiction; and when, in taking custody of the accused, and in its modes of procedure to the determination of the question of his guilt or innocence, and in rendering judgment, the court keeps within the limitations prescribed by the law, customary or statutory. When the court goes out of these limitations, its action, to the extent of such excess, is void. Proceeding within these limitations, its action may be erroneous, but not void." [151 U.S. at pages 256–257, 14 S.Ct. 323, 325.]

Perhaps the most extreme illustration of this rule is in the case of Harman v. United States (C.C.) 50 F. 921. There the defendant, under a statute which authorized a fine and imprisonment at hard labor, was sentenced merely to fine and imprisonment. The sentence was, for the omission of hard labor, held void. Speaking through Caldwell, Circuit Judge, the court said:

"In the courts of the United States the rule is that a judgment in a criminal case must conform strictly to the statute, and that any variations from its provisions, either in the character or extent of the punishment inflicted, renders the judgment absolutely void." [Authorities cited] 50 F. 921, at page 922.

We have in Egan v. United States, 52 App.D.C. 384, 287 F. 958, and upon the faith of the Harman Case, recognized the rule thus expressed.

There can be no doubt that under this rule, the first sentences imposed in the instant case, that is to say, the indeterminate sentences, were void, since the statute under which they were imposed was by its own terms inapplicable to the offenses in question. Therefore, the passing of the term did not deprive the court of power to resentence.

The case of United States v. Wilson (C.C.) 46 F. 748, relied upon by the defendant for the proposition that sentence may not be imposed after the expiration of the term is, on its facts, in conflict with Miller v. Aderhold, 288 U.S. 206, 53 S.Ct. 325, 77 L.Ed. 702. In the Wilson Case the sentence was, upon the defendant's conviction, suspended indefinitely—until a further order of the court. At a later term, this suspension was revoked and the defendant sentenced to imprisonment. This was held erroneous. But upon similar facts, the United States Supreme Court in the Miller Case held to the contrary upon the theory that the order of indefinite suspension was void. The cases of United States v. Mayer, United States v. Pile, Fine v. United States, and Ex parte Singer, cited by the defendant, have been mentioned above. They do not involve void orders or judgments. United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354, holds merely that after imposition of a valid sentence and service of a part thereof, the court, during the term at which it was imposed, has power to amend the sentence by shortening it. In the course of its discussion, the Court in the Benz Case pointed out that to increase the punishment would be to violate the double jeopardy clause of the Fifth Amendment and on that ground distinguished Ex parte Lange, 18 Wall. 163, 21 L.Ed. 872. In the Lange Case a defendant, subject to a fine of not less than $10 nor more than $200 *or* to imprisonment of not to exceed one year, was sentenced to imprisonment for a year *and* a fine of $200. He fully paid the fine and served five days of the prison term. Thereafter, but during the same term, he obtained release on habeas corpus, but was resentenced to one year. The United States Supreme Court held that this violated the constitutional guaranty against double punishment, the defendant by paying the fine having fully satisfied one of the alternatives, and having also suffered five days' imprisonment on account of the other alternative. This case seems to have no applicability to the instant situation, since the defendant here did not fully satisfy the unlawful sentences imposed upon her.[4] United States v. Murray, 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309, also cited by the defendant, is explained in United States v. Benz, supra, as involving "the construction of the Probation Act [18 U.S.C.A. §§ 724-727], not the general powers of the court over its judgments."

2. The question whether the second sentences should have been imposed so as to commence to run as of the date of the original sentences is answered by the Act of June 29, 1932, 47 Stat. 381, § 1 (18 U.S.C.A. § 709a), providing:

"That the sentence of imprisonment of any person convicted of a crime in a court of the United States shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of said sentence: *Provided,* That if any such person shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, the sentence of such person shall commence to run from the date on which he is received at such jail or other place of detention. *No sentence shall prescribe any other method of computing the term.*" [Italics supplied.]

While there is no formal assignment of error upon the proposition that the second sentences constituted, as compared with the original sentences, an increase of the punishment, this point is suggested in the brief of the defendant. An examination of the pertinent statutes discloses, we think, that the point is without merit. The original sentences were for not less than two nor more than four years. Under Section 4 of the Indeterminate Sentence Act (D.C.Code Supp. I, 1933, T. 6, § 454) a prisoner may be released from imprisonment before he has served the maximum period of his sentence, less lawful good-time allowance, only

---

[4] It is to be noted that in Ex parte Lange the Supreme Court treated the judgment first rendered as erroneous, not absolutely void, notwithstanding the fact that it did not strictly pursue the terms of the penalty statute. This is no longer the rule, as has been pointed out in the discussion of In re Mills and In re Bonner, supra.

in the discretion of the Board of Indeterminate Sentence and Parole. Moreover, under the same section, even if a prisoner is released on parole, he remains "while on parole, in the legal custody and under the control of the superintendent of the institution from which the prisoner may have been paroled, until the expiration of the maximum term or terms specified in his sentence, less such good-time allowance as is, or may hereinafter be, provided by law."[5] Also under Sections 5 and 6 of the Act (D.C.Code Supp. I, 1933, T. 6, §§ 455, 456), the parole may be revoked, at the discretion of the Board, for violation of its terms and conditions. We think that under the contemplation of these provisions, the defendant received a maximum sentence of four years, less lawful good-time allowance. Under Section 3 of the same Act (D.C.Code Supp. I, 1933, T. 6, § 453), the defendant had a possibility of being paroled at the end of two years, that section providing for release "on parole as herein provided [that is to say, in the discretion of the Board of Indeterminate Sentence and Parole] at any time after having served the minimum sentence * * *." The second sentences were for fifteen months, less good-time allowance, with the possibility of parole, under a provision of Section 9 of the same Act (D.C.Code Supp. I, 1933, T. 6, § 458) made expressly applicable to a prisoner convicted of a felony committed prior to the effective date of the Act, "after said prisoner has served one-fifth of the sentence imposed," to wit, three months in the instant case. Even if it be conceded—we do not decide the point—that the defendant at the time of imposition of the second sentences was entitled to have taken into consideration the fact that she had already served twenty-five months under the first, the void, sentences, still such twenty-five months plus the fifteen months of the second sentences total only forty months as compared with the maximum of forty-eight months under the first sentences.

In accordance with the above, the judgment of the trial court is

Affirmed.

Mr. Justice VAN ORSDEL took no part in the consideration or decision of this case.

---

5 For the full text of Section 4 and of Sections 5, 6, 3 and 9, hereinafter referred to, see footnote 2 above.