## ANDERSON v. RIVES.
### No. 6658.

United States Court of Appeals for the District of Columbia.

June 29, 1936.

Rehearing Denied Aug. 24, 1936.

James J. Laughlin, of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., and John J. Wilson and Allen J. Krouse, Asst. U. S. Attys., for appellee.

85 F.(2d)—43

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from a judgment of the Supreme Court of the District of Columbia discharging a writ of habeas corpus and dismissing the petition upon which the writ had been issued. The sole question in the case is whether a judgment of the same court sentencing the appellant to imprisonment was valid.

The facts are as follows: On May 16, 1934, an indictment had been returned charging that on April 24, 1934, the appellant had committed the crime of murder in the first degree. On June 26, 1934, the appellant entered a plea of guilty of murder in the second degree. On August 30, 1934, a judgment sentencing her to a term of twenty years in the penitentiary was entered. The importance of the dates mentioned is that all of them are subsequent to July 15, 1932, the effective date of the "Act to establish a Board of Indeterminate Sentence and Parole for the District of Columbia and to determine its functions, and for other purposes." Sections 1–9, 47 Stat. 696, D.C.Code, Supp. I, 1933, Title 6, §§ 137, 451–458, and section 10, added by the Act of June 5, 1934, 48 Stat. 880, D.C. Code, Supp. II, 1936, Title 6, § 459. The Indeterminate Sentence Act provides in Sections 3, 7 and 9, as follows:

"Sec. 3. That hereafter, in imposing sentence on a person convicted in the District of Columbia of a felony, the justice or judge of the court imposing such sentence shall sentence the person for a maximum period, not exceeding the maximum fixed by law, and for a minimum period not exceeding one-fifth of the maximum period fixed by law, and any person so convicted and sentenced may be released on parole as herein provided at any time after having served the minimum sentence: *Provided, however,* That this Act shall not abrogate the power of the justice or judge to sentence a convicted prisoner to the death penalty as now or hereafter may be provided by law: *Provided further,* That where a justice or a judge of the Supreme Court of the District of Columbia has imposed a life sentence on the prisoner convicted in the District of Columbia, said prisoner serving such sentence shall be eligible to parole as herein provided at any time after having served fifteen years of his life's sentence.

674

"Sec. 7. That all Acts or parts of Acts inconsistent with the provisions of the Act are hereby repealed: *Provided, however,* That for any felony committed before this Act takes effect, the penalty, sentence, or forfeiture provided by law for such felony at the time such felony was committed shall remain in full force and effect and shall be imposed, notwithstanding this Act.

"Sec. 9. Upon the appointment of the members of said board, the powers. of the existing parole board over prisoners confined in the penal institutions of the District of Columbia shall cease and determine and all the powers of said existing parole board under the authority of the Act of Congress approved June 25, 1910, entitled 'An Act to parole United States. prisoners, and for other purposes,' as amended, over said prisoners confined in the penal institutions of the District of Columbia shall be transferred to and vested in said Board of Indeterminate Sentence and Parole: *Provided, however,* That in the case of a prisoner convicted of felony committed prior to the effective date of this Act, and in the case of any prisoner convicted of misdemeanor when the aggregate sentence imposed is in excess of one year, said Board of Indeterminate Sentence and Parole may parole said prisoner, under the provisions of this Act, after said prisoner has served one-fifth of the sentence imposed." 47 Stat. 697, 698, 699 (D.C.Code Supp. I, 1933, Title 6, §§ 453, 457, 458).

The statute stipulating the penalty for murder in the second degree provides:

" * * * The punishment of murder in the second degree shall be imprisonment for life, or for not less than twenty years." 31 Stat. 1321, § 801.

This statute has been made a part of the District of Columbia Code. D.C.Code 1929, Title 6, § 24. The term of court at which the sentence of twenty years was imposed upon the appellant has expired.

The contention of the appellant is that since the act for which she was indicted and her conviction were both subsequent to the date upon which the Indeterminate Sentence Act became effective, it was the duty of the trial court to sentence her un-

der that Act, and that thereunder the court should have imposed not a definite sentence of twenty years as it did, but a sentence stipulating a maximum and a minimum period. Therefore, the appellant asserts, the sentence actually imposed, not being in strict conformity with the Indeterminate Sentence Act, is void, and, the term having expired, she is entitled to discharge—this upon the theory that the trial court has lost jurisdiction to impose a new and correct sentence.

It is true that if a criminal judgment is not in strict accord with the statute applicable to the crime involved, it is void. We so held in De Benque v. United States, 66 App.D.C. 36, 85 F.(2d) 202, decided May 11, 1936. But it is not true that where a court has imposed a void sentence, it lacks power, because of expiration of the term, to impose a new and valid one. This also we held in De Benque v. United States. Therefore, if we were to conclude that the sentence imposed in the instant case were void, we would be obliged to remand the case with directions to resentence the appellant.

But we think that the sentence imposed was valid: The problem in the case arises in the application of Section 3 of the Indeterminate Sentence Act to the penalty "fixed by law" for second degree murder. In the ordinary case the application of the Indeterminate Sentence Act is not difficult. For example, the penalty for housebreaking is fixed by law at imprisonment for not more than fifteen years. 31 Stat. 1323, 1324, § 823, D.C.Code 1929, Title 6, § 55. Therefore, under the Indeterminate Sentence Act the trial court could impose a term of imprisonment of fifteen years, or less, as a maximum, and of not more than three years as a minimum, *i. e.,* not more than one-fifth of the fifteen years. But in the instant case the maximum term of imprisonment for second degree murder is life, and it is not possible to take one-fifth of life because life itself is indeterminate.

The statute must be given a sensible construction as to its applicability. United States v. Kirby, 7 Wall.(74 U.S.) 482, 19 L.Ed. 278.[1] That case, of course, had to do

---

[1] Therein Mr. Justice Field said:

"The common sense of man approves the judgment mentioned by Puffendorf, that the Bolognian law which enacted, 'that whoever drew blood in the streets. should be punished with the utmost severity,' did not extend to the surgeon who opened the vein of a person that fell down in the street in a fit. The same common sense accepts the ruling, cited by Plowden; that the statute of 1st Edward II, which enacts that a prisoner who breaks prison shall be guilty of felony, does not extend to a prisoner who

with the applicability of a statute to facts obviously not intended to be covered by the statute, but the principle of the case is valid in respect of the applicability of a statute to another statute. We think that by no sensible construction of the Indeterminate Sentence Act can it be said to have been intended to apply where it is mathematically impossible to apply it.

It is objected that the second proviso of Section 3 of the Indeterminate Sentence Act—"where a justice or a judge of the Supreme Court of the District of Columbia has imposed a life sentence on the prisoner convicted in the District of Columbia, said prisoner serving such sentence shall be eligible to parole as herein provided at any time after having served fifteen years of his life's sentence."—indicates that Congress did intend the application of the Indeterminate Sentence Act to offenses involving life imprisonment as a penalty. But this is not a necessary conclusion. Section 9 of the Indeterminate Sentence Act provides for the transfer of the powers of the parole board existing under the authority of the Act of Congress approved June 25, 1910, entitled "An Act to parole United States prisoners, and for other purposes," [36 Stat. 819, as amended by the Act of January 23, 1913, 37 Stat. 650, 18 U. S.C.A. §§ 714–723] over prisoners confined in the penal institutions of the District of Columbia, to the Board of Indeterminate Sentence and Parole created by the Indeterminate Sentence Act. It is conceivable that the second proviso of Section 3 was intended to guide the new parole board so far as concerned release on parole of prisoners already serving a life sentence. But we do not assume in the instant case to pass upon the effect of those provisions of the Indeterminate Sentence Act relating to the parole of prisoners, because no question of right to parole is herein presented. And even if the second proviso of Section 3 must be said to indicate that Congress did intend the application of the Indeterminate Sentence Act to offenses involving life imprisonment as a penalty, still we cannot give effect to such expression of intention when the particular provision, to which the proviso in question is attached, stipulating precisely the method of application of the Act, is mathematically inapplicable to the offense and penalty involved.

■ It is also objected that to hold the Indeterminate Sentence Act inapplicable to second degree murder and the penalty therefor is to ignore Section 7 providing that "all Acts or parts of Acts inconsistent with the provisions of the Act are hereby repealed . . ." But this section we think was intended to repeal those provisions of existing acts requiring the imposition of a definite, as distinguished from an indeterminate, sentence, and possibly also to effect *pro tanto* repeal of the minimum penalty provisions of such existing acts as themselves stipulate a minimum penalty in excess of one-fifth of a stipulated maximum penalty, *e. g.*, Act of March 3, 1901, 31 Stat. 1326, § 842, as amended by the Act of June 30, 1902, 32 Stat. 535, D.C. Code 1929, Title 6, § 85, respecting obtaining money by false pretenses. But upon the question of such *pro tanto* repeal, we, again, do not assume to pass. In any event, we think it cannot be said that the repealing provision of Section 7 operates to repeal as inconsistent the existing act penalizing second degree murder, because it cannot be said that an act is inconsistent with the Indeterminate Sentence Act to which the latter is mathematically inapplicable.

Three other points of view as to the possible meaning of the Act are suggested: One is that the second proviso of Section 3 is to be taken as an expression of Congressional intent that, where an existing statute carries a penalty of life imprisonment, the maximum and minimum provision of the Indeterminate Sentence Act need not be employed, and that the repealing provision of Section 7 of the Act operates to repeal that part of the statute concerning second degree murder which permits as an alternative to life imprisonment a sentence for a term of years not less than twenty. The effect of this would be to leave second degree murder punishable by life imprisonment only, with eligibility for parole to arise in fifteen years. We think this solution of the problem not supportable

---

breaks out when the prison is on fire— 'for he is not to be hanged because he would not stay to be burnt.' And we think that a like common sense will sanction the ruling we make, that the act of Congress which punishes the obstruction or retarding of the passage of the mail, or of its carrier, does not apply to a case of temporary detention of the mail caused by the arrest of the carrier upon an indictment for murder." 7 Wall. (74 U.S.) 482, at page 487, 19 L.Ed. 278.

because of its extreme harshness. It is unthinkable that Congress should have intended to stretch upon the Procrustean bed of life imprisonment all persons convicted of second degree murder no matter what the circumstances of the offense in a particular case may have been. A court ought not ascribe such an intention to Congress unless expressed in inescapably clear terms.[2]

The second point of view suggested is that it is possible to reconcile the Indeterminate Sentence Act and the existing act concerning second degree murder, in a manner permitting the application of the maximum and minimum provision of Section 3. The suggestion is that the maximum sentence could be for life, or for any definite term of years not less than twenty, and the minimum not to exceed fifteen years. While this is consistent with the Indeterminate Sentence Act so far as the maximum is concerned, since such a maximum would not exceed the maximum fixed by law, to wit, life, the suggested minimum

[2] In this connection it is of interest to note that second degree murder is not the only offense punishable by life imprisonment. At least two other acts require a sentence of life imprisonment:

"Whoever, being a seaman, lays violent hands upon his commander, thereby to hinder and prevent his fighting in defense of his vessel or the goods intrusted to him, is a pirate, and shall be imprisoned for life." 35 Stat. 1146, § 294 (18 U.S.C.A. § 485)

"Whoever, being engaged in any piratical cruise, or enterprise, or being of the crew of any piratical vessel, lands from such vessel, and on shore commits robbery, is a pirate, and shall be imprisoned for life." 35 Stat. 1147, § 302 (18 U.S.C.A. § 493)

At least two other acts permit a sentence of life imprisonment:

"Whoever plunders, steals, or destroys any money, goods, merchandise, or other effects, from or belonging to any vessel in distress, or wrecked, lost, stranded, or cast away, upon the sea, or upon any reef, shoal, bank, or rocks of the sea, or in any other place within the admiralty and maritime jurisdiction of the United States, shall be fined not more than five thousand dollars and imprisoned not more than ten years; and whoever willfully obstructs the escape of any person endeavoring to save his life from such vessel, or the wreck thereof; or whoever holds out or shows any false light, or extinguishes any true light, with intent to bring any vessel sailing upon the sea into danger, or distress, or shipwreck, shall be imprisoned not less than ten years and may be imprisoned for life." 35 Stat. 1146, § 297 (18 U.S.C.A. § 488)

"Whoever, upon the high seas or on any other waters within the admiralty and maritime jurisdiction of the United States, willfully and corruptly casts away or otherwise destroys any vessel, of which he is owner, in whole or in part, with intent to prejudice any person that may underwrite any policy of insurance thereon, or any merchant that may have goods thereon, or any other owner of such vessel, shall be imprisoned for life or for any term of years." 35 Stat. 1147, § 300 (18 U.S.C.A. § 491)

While the acts described in these statutes are not likely to be committed in the District of Columbia, the statutes quoted are broad enough to cover them if they are committed there. All of these statutes were in effect prior to the passage of the Indeterminate Sentence Act.

Subsequent to the passage of the Indeterminate Sentence Act, Congress passed the following act:

"Whoever shall be guilty of, or of aiding or abetting in, seizing, confining, inveigling, enticing, decoying, kidnapping, abducting, concealing, or carrying away any individual, by any means whatsoever, and holding or detaining, or with the intent to hold or detain, such individual for ransom or reward, shall, upon conviction thereof, be punished by imprisonment for life or for such term as the court in its discretion may determine. This section shall be held to have been violated if either the seizing, confining, inveigling, enticing, decoying, kidnapping, abducting, concealing, carrying away, holding, or detaining occurs in the District of Columbia. If two or more individuals enter into any agreement or conspiracy to do any act or acts which would constitute a violation of the provisions of this section, and one or more of such individuals do any act to effect the object of such agreement or conspiracy, each such individual shall be deemed to have violated the provisions of this section." 47 Stat. 858 (D.C.Code Supp.I, 1933, Title 6, § 36)

We do not assume in this opinion to rule upon the question of the applicability of the Indeterminate Sentence Act to any of the offenses described in this footnote, this for the reason that there is, strictly speaking, nothing before us in this case except the question of the applicability of the Indeterminate Sentence Act to the offense of second degree murder.

ignores the requirement of Section 3 for a minimum period not exceeding one-fifth of the maximum fixed by law. Therefore, this solution is not a real reconciliation of the two statutes. Moreover, it puts so strained a construction upon them as not to be tenable.

The third suggestion is ·that Congress intended the imposition, in cases of second degree murder, of a sentence of either a definite term of years or of life imprisonment; if the latter, eligibility to parole to arise, under the second proviso of Section 3, in fifteen years; if the former, eligibility to parole to arise, under the spirit of the Act as evidenced in Sections 3 and 9, at the end of one-fifth of the definite term. But to ascribe this intention to Congress requires the court to ignore the maximum and minimum provision of Section 3 and also to ignore the twenty year minimum provision of the existing act concerning second degree murder.

We reach the conclusion, therefore, that the Indeterminate Sentence Act is inapplicable to second degree murder and that the existing statute providing a penalty of imprisonment for life or for not less than twenty years remains in effect. Therefore, the sentence imposed upon the appellant in the instant case of a definite term of twenty years is a valid sentence.

Accordingly, the judgment ' of the Supreme Court' of the District of Columbia discharging the writ of habeas corpus and dismissing the petition upon which the writ had been issued is

Affirmed.