## UNITED STATES v. BOZZA.
### No. 9013.

Circuit Court of Appeals, Third Circuit.

Argued March 7, 1946.

Decided May 17, 1946.

Harold Simandl, of Newark, N. J., for appellant.

Charles J. Tyne, of Newark, N. J. (Edgar H. Rossbach, U. S. Atty., of Newark, N. J., on the brief), for appellee.

Before BIGGS, GOODRICH, and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

Bozza and one Nicholas Chirichillo were tried and convicted under an indictment containing five counts charging offenses against the revenues of the United States. From judgment and sentence of the District Court for the District of New Jersey, Bozza appeals.

In a midnight raid on a dilapidated farmhouse at Woodbridge, New Jersey, state police officials discovered an illicit still, set up but not cooking. Though barren of normal house furnishings, the apparently deserted structure contained the usual paraphernalia essential to an illicit still enterprise. In addition to the distillation plant, the officials found bags of sugar, 600 gallons of fermenting sugar mash, and 2½ gallons of alcohol which were in the receiving tank.[1]

From the government's case, it is fairly apparent that Chirichillo was the dominant

---

[1] This is a receptacle into which the alcohol drips in the process of distillation.

Presence of rust and water gives rise to appellant's speculation that the 2½ gal-

594

member of the group which carried on the illicit enterprise. He leased the house. He brought raw materials there. With the help of Bozza and one other he operated the still. And, finally, Chirichillo transported the finished product, alcohol, to Newark for disposition there.

Because appellant challenges the sufficiency of the proof to sustain conviction on any count, the charges against him and the evidence in support thereof will be summarized.

The first count charges Bozza, Chirichillo, Ellen Vettor, and Peter Milito with the unlawful carrying on of the business of a distiller and the making and distilling of 2½ proof gallons of spirits with intent to defraud the United States of the tax thereon.[2] The second count charges the same parties with unlawfully having in their possession and custody and under their control a still set up for the unlawful production of distilled spirits for beverage and commercial purposes, which they failed to register as required by law.[3] The third count charges them with unlawfully making and fermenting 600 gallons of mash intended for distillation and production of spirits in a building not duly authorized as a distillery.[4] The fourth count charges them with the unlawful concealment of 2½ gallons of distilled spirits with intent to defraud the United States of the tax thereon.[5] The fifth count charges Bozza and Chirichillo with the unlawful transportation of 35 gallons of distilled spirits with intent to defraud the United States of the tax thereon.[6]

To sustain conviction of Bozza on any of the five counts, reliance must be placed on the testimony of Ellen Vettor. She testified that Chirichillo was the moving party throughout the enterprise. She identified Bozza as a man called "Jack" who "helped out" Chirichillo in the making of the alcohol inside the farmhouse. She swore that Bozza "wasn't there every day in the week" and that "he would just come around between two and three times a week he would appear there; he was not there steady." In response to a question of the court, "When he did come there what did he do?" she replied, "He would help, he would take instructions from Nick and help him around." The only other evidence she gave against Bozza was in describing how Chirichillo transported the alcohol from the farmhouse to Newark. She testified that the cans of alcohol were in Chirichillo's car, in which she rode, and that "sometimes we would follow Jack Bozza's car." She testified further that so far as she knew there never was any alcohol carried in Bozza's automobile.

The question for our determination is whether Vettor's testimony, relating to Bozza, as summarized above, is sufficient to sustain conviction on any of the counts. Section 332 of the Criminal Code [7] makes every person who "directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission" a "principal." Vettor's testimony justified a jury finding that Chirichillo directly committed and Bozza aided, abetted or counseled the commission of the offenses charged in the first three counts: Cf. United States v. Johnson, 1943, 319 U.S. 503, 514, 63 S.Ct. 1233, 87 L.Ed. 1546.

But, the concealment and transportation counts stand on a different footing. Mere evidence that Bozza "helped around" in the cooking of alcohol would not justify a finding that he directly concealed or that he aided or abetted in the concealment of the specific 2½ gallons of alcohol found in the still's receiving tank: Cf. Czarnecki v. United States, 3 Cir., 1938, 95 F.2d 32; United States v. Sall, 3 Cir., 1940, 116 F. 2d 745.

We reach a similar conclusion regarding

lons of alcohol thus found might easily have been the residue in the tank remaining after the operators thought they had emptied it.

2 26 I.R.C. Sec. 2833(a), 26 U.S.C.A. Int.Rev.Code, § 2833(a).

3 26 I.R.C. Sec. 2810(a), 26 U.S.C.A. Int.Rev.Code, § 2810(a).

4 26 I.R.C. Sec. 2834, 26 U.S.C.A. Int. Rev.Code, § 2834.

5 26 I.R.C. Sec. 3321(a), 26 U.S.C.A. Int.Rev.Code; § 3321(a).

6 26 I.R.C. Sec. 2803, 26 U.S.C.A. Int. Rev.Code, § 2803.

7 18 U.S.C.A. § 550.

the conviction on the transportation count. Mere evidence that Chirichillo in transporting the alcohol sometimes followed Bozza's automobile would not warrant a finding that Bozza transported or aided or abetted in the illegal transportation of 35 gallons of alcohol.

 Consequently, the convictions on the fourth and fifth counts cannot stand.

 Appellant challenges the legality of the sentence on the first three counts. On the morning of July 23, 1945, following the return of the guilty verdict, the trial judge sentenced Bozza to two years' imprisonment on each of the first three counts and to two years' and six months' imprisonment on the fourth and fifth counts, all the sentences to run concurrently. That same day, about five hours later, Bozza was recalled and the court added certain minimum mandatory fines and penalties to the sentences.[8] In the interim, Bozza had been taken to a marshal's detention room in the same building in which the United States District Court is held and from there removed to the Hudson County Jail in Jersey City, a federal place of detention, where he awaited transportation to the place where his sentence was to be served. Appellant now contends that because he had begun service of his sentence (18 U.S.C.A. § 709a) the trial judge lacked the power to increase his punishment by adding the fines and penalties. It is true that a judge is powerless to add to a sentence, once validly imposed, after the prisoner has begun to serve it. This is "upon the ground that to increase the penalty is to subject the defendant to double punishment for the same offense in violation of the Fifth Amendment to the Constitution, which provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb'": United States v. Benz, 1931, 282 U.S. 304, 307, 51 S.Ct. 113, 114, 75 L.Ed. 354. Cf. Roberts v. United States, 1943, 320 U.S. 264, 64 S.Ct. 113, 88 L.Ed. 41.

 However, it is well established that imposition of a sentence at variance with the statutory requirements is a "void act". Such a sentence may be superseded by a new sentence in conformity to the provisions of the statute. It is no hindrance that the correction—even when it entails a greater punishment—occurs after sentence has been partially served or after the term of court has expired: See King v. United States, 1938, 69 App.D.C. 10, 98 F.2d 291, DeBenque v. United States, 1936, 66 App. D.C. 36, 85 F.2d 202, 106 A.L.R. 839, certiorari denied, 1936, 298 U.S. 681, 56 S.Ct. 960, 80 L.Ed. 1402, rehearing denied, 1936, 299 U.S. 620, 57 S.Ct. 6, 81 L.Ed. 457; Anderson v. Rives, 1936, 66 App.D.C. 174, 85 F.2d 673; Egan v. United States, 1923, 52 App.D.C. 384, 287 F. 958; Harman v. United States, C.C., 1892, 50 F. 921; D.C., 1895, 68 F. 472 (same case on resentence).[9] These authorities are dispositive of appellant's reliance on the double jeopardy clause of the Fifth Amendment unless they are distinguishable because, here, the trial judge corrected the erroneous sentence on his own initiative.

 "Double jeopardy" is a plastic concept. Its application has never been immutably fixed, either at common law or

---

[8] Thus, conviction on the first count carried a mandatory punishment of a fine of not less than $100 nor more than $5000 and imprisonment for not less than thirty days nor more than two years. Punishment for conviction on the second count is fixed by Act of Congress at a penalty of $500, fine of not less than $100 nor more than $1000 and imprisonment for not less than one month nor more than two years. Under count 4, conviction required a fine of not less than $500 nor more than $5000 and imprisonment for not less than six months nor more than two years. As to each count, on recalling the prisoner, the court added the minimum fine and penalty as required in order to bring the sentence into conformity with the Internal Revenue Code provisions cited in footnotes 2, 3, 4 supra.

[9] In these cases, the defendant attacked the original improperly imposed sentence. A resentence even to a greater punishment than that originally imposed would not violate the double jeopardy clause of the Fifth Amendment: Murphy v. Commonwealth of Massachusetts, 1900, 177 U.S. 155, 20 S.Ct. 639, 44 L.Ed. 711; cf. Kepner v. United States, 1904, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114, 1 Ann.Cas. 655; Trono v. United States, 1905, 199 U.S. 521, 26 S.Ct. 121, 50 L.Ed. 292, 4 Ann.Cas. 773.

under the protective Bill of Rights. Palko v. Connecticut, 1937, 302 U.S. 319, 322, 58 S.Ct. 149, 82 L.Ed. 288. Uncorrected, the court's action was violative of congressional will: Ex parte United States, 1916, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129, L.R.A. 1917E, 1178, Ann.Cas.1917B, 355. Corrected, it merely imposed upon the defendant a penalty fixed by Act of Congress. This is neither double jeopardy nor double punishment. We see no constitutional hindrance to the court's action: cf. United States v. Roberts, 320 U.S. 264, 276, 277, 64 S.Ct. 113, 88 L.Ed. 41 (dissent by Frankfurter, J.) We conclude that the sentence as amended by the court below is valid and operative: cf. Rowley v. Welch, 1940, 72 App.D.C. 351, 114 F.2d 499.

Appellant's final contention that the charge of the trial judge "took the form of animated argument and amounts to acts of advocacy in favor of the government" is without merit. Taking the charge in its entirety, we believe it to be a fair presentation of the case and without prejudice to the appellant.

 Since we have concluded that the government's proof was insufficient to sustain a conviction on either the fourth or fifth counts, a reversal must follow. The question is whether we must remand for a new trial or whether it is proper to direct entry of judgment of acquittal. A directed verdict of acquittal requires action by a jury and it has been held, under common law criminal practice, that upon an erroneous refusal of a trial judge to direct a verdict of acquittal, the appellate court must remand for a new trial. Cf. Tatcher v. United States, 3 Cir., 1939, 107 F.2d 316 with United States v. Tatcher, 3 Cir., 1942, 131 F.2d 1002. But see Commonwealth v. Benz, 1935, 318 Pa. 465, 472, and 477, 178 A. 390.

By the Rules of Criminal Procedure for the District Courts of the United States, effective March 21, 1946, motions for directed verdict are abolished and in their place are substituted motions for judgment of acquittal. Rule 29(a).[10] And, Rule 29 (b) permits judgments non obstante veredicto.[11] In the Advisory Committee Note to Rule 29(b), it is stated that, "This rule is in substance similar to Rule 50(b) of the Federal Rules of Civil Procedure [28 U.S. C.A. following section 723c] and permits the court to render judgment for the defendant notwithstanding a verdict of guilty. Some Federal courts have recognized and approved the use of a judgment non obstante veredicto for the defendant in a criminal case, Ex parte United States, 7 Cir., 101 F.2d 870 [131 A.L.R. 176], affirmed by an equally divided court, United States v. Stone, 308 U.S. 519, 60 S.Ct. 177, 84 L.Ed. 441. The rule sanctions this practice."

Rule 59 provides that the Rules "govern all criminal proceedings" commenced after their effective date, "and so far as just and practicable all proceedings then pending." The present is a "pending" proceeding. It is both just and practicable to reverse and remand for entry of judgment of acquittal on the fourth and fifth counts because of insufficiency of proof to sustain such convictions.

Accordingly, judgment of the court below

---

10 Rule 29(a) provides as follows: "Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right."

11 Rule 29(b) provides as follows: "If a motion for judgment of acquittal is made at the close of all the evidence, the court may reserve decision on the motion, submit the case to the jury and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the motion is denied and the case is submitted to the jury, the motion may be renewed within 5 days after the jury is discharged and may include in the alternative a motion for a new trial. If a verdict of guilty is returned the court may on such motion set aside the verdict and order a new trial or enter judgment of acquittal. If no verdict is returned the court may order a new trial or enter judgment of acquittal."

is affirmed as to the conviction and sentence on the first three counts. It is reversed and remanded for entry of judgment of acquittal on the fourth and fifth counts.