Manuel **JOHNSON**, Petitioner,

v.

Charles H. **WARD**, United States Marshal for the District of Columbia, Respondent.

No. 5–59.

United States District Court
District of Columbia.

Feb. 26, 1959.

Albert J. Ahern, Jr., James J. Laughlin, Washington, D. C., for petitioner.

Oscar Altshuler, Asst. U. S. Atty., Washington, D. C., for respondent.

### YOUNGDAHL, District Judge.

Petitioner has filed a writ of habeas corpus alleging that his detention, under warrant of the United States Board of Parole, is unlawful.

On January 24, 1936, in this court, petitioner was convicted of second-degree murder and sentenced to a term of thirty years. After spending two years in the District of Columbia Reformatory at Lorton, Virginia, he was transferred to the penitentiary at Leavenworth where he remained about fifteen years. From there he was transferred to the penitentiary at Atlanta, Georgia, and after several months' confinement, was given a conditional release on January 29, 1954, since he had, at that point, accumulated good time and industrial good time allowances which, when added to the time he had already served, totalled thirty years, his maximum sentence. See 18 U.S.C.A. §§ 4161, 4162.

On July 8, 1958, approximately four and one-half years after his conditional release, petitioner was convicted in the Municipal Court for the District of Co-

lumbia of attempted procuring and vagrancy. He was sentenced to serve 180 days on the first charge and 90 days on the second—the sentences to run consecutively. On July 8, 1958, the United States Board of Parole issued a warrant for the petitioner and this was executed on January 20, 1959, by the United States Marshal at the conclusion of the sentences mentioned above.[1] Petitioner is now in custody awaiting a hearing before the United States Board of Parole to determine whether he has violated his conditional release of January 29, 1954.

Petitioner asserts that the original sentence of 30 years has been served in full and that his detention is therefore unlawful. His argument rests on the proposition that D.C.Code § 24–204, at the time he was sentenced, provided that a parolee was to be under the control of federal authorities only until the expiration of his maximum sentence less such good time allowance as he has earned; that he is, therefore, not under the control of federal authorities and has not been since January 29, 1954.

At the time petitioner was sentenced, in 1936, D.C.Code § 24–204 read:

"That whenever, within the limitations of section 3 of this Act, it shall appear to the Board of Indeterminate Sentence and Parole, * * * that any prisoner serving an indeterminate sentence is fitted * * * for release, * * * said Board * * * may, in its discretion, authorize the release of such prisoner on parole, and he shall be allowed to go on parole * * * and to remain, while on parole, in the legal custody and under the control of the superintendent of the institution from which the prisoner may have been paroled, until the expiration of the maximum of the term or terms specified in his sentence, *less such good-time allowance as is, or may hereinafter be, provided by law* * * *." (Emphasis supplied.)

---

1. Petitioner actually served less than 270 days because of time off for good behavior.

In 1940, this provision was amended to substitute for the emphasized language, the phrase "without regard to the good-time allowance".

■ Petitioner argues that the amended provision has no applicability to him since he was sentenced prior to its enactment. The Court agrees (but not for the petitioner's reason) that § 24–204, as amended, does not apply to the petitioner. The Court further believes that § 24–204, as written in 1936, does not apply to the petitioner. Section 24–204 (in either form) does not now apply because petitioner was not paroled on January 29, 1954, but was given a conditional release. Section 24–204 concerns the authorizations of paroles; 18 U.S.C.A. §§ 4163, 4164, concern the conditional release of prisoners. Petitioner was released pursuant to Title 18 of the U.S.Code, the pertinent provisions of which read:

"§ 4163. Discharge

"A prisoner shall be released at the expiration of his term of sentence less the time deducted for good conduct. * * *"

"§ 4164. Released prisoner as parolee

"A prisoner having served his term or terms less good-time deductions shall, upon release, be deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days. * * *."

And see Story v. Rives, 1938, 68 App.D. C. 325, 97 F.2d 182; Ex parte Gould, D. C.1943, 51 F.Supp. 354.

In Hicks v. Reid, 1952, 90 U.S.App. D.C. 109, 194 F.2d 327, the Court of Appeals was presented with this precise argument. The Court there held that Hicks, after his release, was under the supervision of the parole board until his maximum sentence expired—*not* counting time off for good behavior. Petitioner here seeks to distinguish Hicks on the ground that Hicks had been given an indeterminate sentence and he, Johnson, did not receive an indeterminate sentence but a definite term.[2] Cf. MacAboy v. Klecka, D.C.D.Md.1938, 22 F.Supp. 960.

■ The Court is unable to agree that this point validly distinguishes the Hicks case. An indeterminate sentence differs from a determinate sentence only in that the former imposes a minimum term. The good-time and industrial-time off provisions, however, are geared to the maximum term; the minimum term does not affect the computation. Petitioner received neither a day more nor a day less for good-time off than he would have received had he been sentenced for an indeterminate term of 10 to 30 years.

Congress, in its Act of June 6, 1940, provided that with reference to felonies committed prior to June 6, 1940,

"(b) Where a justice or judge of the district court of the United States has imposed or shall impose a sentence for a definite term of imprisonment on a prisoner convicted of a felony committed before this amendatory Act takes effect, such prisoner shall be eligible to parole under the provisions of said Act approved July 15, 1932, as amended, after having served one-third of the sentence imposed." 54 Stat. 242, 244, ch. 254, § 9 (1940).

And see 18 U.S.C.A. § 4202.

Petitioner, therefore, had the precise parole benefits and good-time benefits

---

2. The reason for this is that the indeterminate sentence statute, D.C.Code 1940, § 24–203, at the time petitioner was sentenced, fixed a minimum sentence not to exceed "one-fifth of the maximum period *fixed by law*" (emphasis supplied). Since the maximum period fixed by law for the crime of second-degree murder is life, the courts found it impossible to fix a minimum sentence. See Anderson v. Rives, 1936, 66 App.D.C. 174, 85 F.2d 673. The statute was amended in 1940 to read that the minimum sentence shall not exceed "one-third of the maximum sentence *imposed*" (emphasis supplied). With further clarifying language, it became specifically applicable to sentences for second-degree murder.

under his 30 year sentence that he would have had were he sentenced in 1936 to a term of 10 to 30 years. "An indeterminate sentence is one for the maximum period imposed by the court, subject to termination by the Parole Board at any time after service of the minimum." Story v. Rives, 68 App.D.C. at page 330, 97 F.2d at page 187. If he had actually received a 10 to 30 year sentence, he would fall squarely with the Hicks holding. Since his definite sentence did not prejudice him in any respect, and did not affect his disposition (even potentially), Hicks controls here.

In making this determination that the petitioner is lawfully in custody and that the writ must be discharged, the Court does not intimate as to the petitioner's eligibility for continued conditional release. That is a matter solely for the United States Board of Parole to determine after the hearing which shall be promptly given the petitioner.

Petition denied.