NYE et al. v. UNITED STATES et al.
ELMORE v. COUNCIL et al.
No. 4640.

Circuit Court of Appeals, Fourth Circuit.
Aug. 30, 1940.

L. R. Varser and T. A. McNeill, both of Lumberton, N. C. (Varser, McIntyre & Henry, of Lumberton, N. C., on the brief), for appellants.

William B. Guthrie, of Durham, N. C. (Guthrie & Guthrie, of Durham, N. C., on the brief), for appellee W. B. Guthrie.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

R. H. Nye and L. C. Meares (Mayers) appeal from a judgment of the District Court whereby they were adjudged guilty of contempt of court by reason of conduct tending to obstruct the administration of justice. The offense occurred in connection with a suit brought by W. H. Elmore, Administrator of the estate of James Elmore, deceased, against G. T. Council and Germain Bernard, trading as B-C Remedy Company, in which the administrator charged that the deceased came to his death through the consumption of a dangerous and poisonous headache powder manufactured by the defendants. The behavior of Nye and Meares was brought to the attention of the court, and the court having made due inquiry, ordered them to show cause why they should not be adjudged guilty of contempt, heard the evidence of both sides and entered the judgment appealed from. Thereby Nye was ordered to pay a fine of $500 and costs of the proceeding, including the sum of $500 to the plaintiff's attorney as compensation for his efforts and expenses incurred on the plaintiff's behalf in bringing the contemptuous conduct of the appellants to the attention of the court;[1] and Meares was ordered to pay a fine of $500.

The findings of the District Judge, amply supported by the evidence, disclosed in substance the following facts: On March 16, 1939, leave was granted to the administrator to prosecute his suit against the Remedy Company in forma pauperis. W. B. Guthrie was appointed as attorney to represent him. On March 18, 1939 suit for wrongful death claiming damages in the sum of $30,000 was brought. Answer was filed on April 29, 1939. Meanwhile, on April 19, 1939, Elmore, the administrator, mailed a letter addressed to the District Judge at Greensboro, North Carolina, requesting that the case be dismissed and enclosing a similar communication addressed to his attorney. This effort to dismiss the suit was brought about improperly by Nye, with the cooperation of Meares. Nye's daughter had married the son of Council, one of the owners of the headache powder business; and Nye, being a shrewd business man of great energy and ingenuity, undertook to put an end to the Elmore suit.

To this end, he sent Meares, his tenant, who was personally acquainted with Elmore, to Elmore's home near Conway, South Carolina, to bring Elmore by automobile to Nye's home at Lumberton, North Carolina. Elmore is an illiterate man, feeble in mind and body, and both appellants had knowledge of his condition. Meares found Elmore working in a ditch, plied him with liquor until he was under its influence, and then giving him no op-

[1] The imposition of a fine in a contempt proceeding in order to compensate the complainant is considered in Cary Mfg. Co. v. Acme Flexible Clasp Co., 2 Cir., 108 F. 873; Kreplik v. Couch Patents Co., 1 Cir., 190 F. 565; Merchants' S. & G. Co. v. Board of Trade of Chicago, 8 Cir., 201 F. 20; Oates v. United States, 4 Cir., 233 F. 201.

portunity to go to his home nearby and change his clothes, took him to Lumberton under a promise to return him to his home that night. First they went to Nye's place of business when a conversation between him and Elmore took place. Nye then tried to get his lawyer, but failing, made an appointment for a conference at the lawyer's office the next morning. Elmore had a son living in Lumberton, but nevertheless he was taken to Nye's home where Elmore and Meares occupied the same room for the night. Drinking continued during the night.

The next morning Nye took Elmore to the lawyer's office who prepared the letters to the judge and to Elmore's attorney, and also prepared a final administration account to be filed in the Probate Court in North Carolina. For these services Nye paid the lawyer's fee. Nye then took Elmore to the Probate Court, had him discharged as administrator and paid the clerk a fee of $1. Nye then took Elmore to the post office, registered the letter to the judge and paid the postage.

Although Meares got Elmore under control by giving him intoxicating liquor, he was not under the influence of liquor when he signed the papers in the lawyer's office, nor was he promised or paid anything. Nevertheless he was at the time still completely under the control of Nye and Meares. Upon these facts the judge held that the conduct of Nye and Meares constituted misbehavior so near to the presence of the court as to obstruct and impede the due administration of justice, and accordingly found each of them guilty of comtempt of court.

■ The federal statutes relating to contempt are codified in 28 U.S.C.A. §§ 385–390. It is provided in § 385, insofar as it relates to the instant case, that the power to punish contempts "shall not be construed to extend to any cases except of misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice". The suggestion was made in the lower court that the acts charged against the appellants were not punishable by the District Court of the Middle District of North Carolina since they took place outside the boundaries of the District and beyond its jurisdiction. The position is not tenable and very properly was not insisted upon in this court. The quoted statutory phrase is not "to be spatially construed", McCann v. New York Stock Exchange, 2 Cir., 80 F.2d 211, 213, certiorari denied McCann v. Leibell, 299 U. S. 603, 57 S.Ct. 233, 81 L.Ed. 444. "The provision conferred no power not already granted and imposed no limitations not already existing. In other words, it served but to plainly mark the boundaries of the existing authority. * * * The test therefore is the character of the act done and its direct tendency to prevent and obstruct * * * judicial duty". Toledo Newspaper Co. v. United States, 247 U.S. 402, 418, 419, 38 S.Ct. 560, 564, 62 L.Ed. 1186; Myers v. United States, 264 U.S. 95, 44 S.Ct. 272, 68 L.Ed. 577; see also Sullivan v. United States, 8 Cir., 4 F.2d 100. Although the undue pressure exerted by the appellants upon Elmore took place at a distance from the court, it culminated in the letters addressed to the judge and Elmore's attorney directing the dismissal of the suit, and effectually interfered with the court in the performance of its functions. It is uniformly held that conduct attended by such a result takes place "so near" to the court as to obstruct the administration of justice. See 28 U.S.C.A. § 385, n. 13.

■ The contention chiefly emphasized by the appellants is that the District Court was without jurisdiction to issue the order to show cause because it was based upon a petition and motion of Elmore's attorney which was not verified by affidavit. This contention is utterly without merit in this case, although it be assumed, as many courts hold, that an affidavit is a jurisdictional requirement in such a situation.[2] The attorney's petition and motion

---

[2] Contempts are generally classified as direct and constructive, that is, those committed in the physical presence of the court and those committed without. At common law an affidavit was considered unnecessary in direct contempts because the court takes judicial notice of matters occurring before it; but in constructive contempts, when the proceeding was instituted by a private person, an affidavit was generally considered necessary in order to give notice both to the court and to the alleged contemnor. Rapalje on Contempts, p. 121; Blackstone, Commentaries, 1807 Ed., Vol. 4, p. 286; Sona v. Aluminum Castings Co., 6 Cir., 214 F. 936; 2 A.L.R. 225, note. Cf. Bowles v. United States, 4 Cir., 50 F.2d 848, 851;

were filed on September 20, 1939, unaccompanied by an affidavit; but such an affidavit was filed on October 7, 1939, no action having been taken by the appellants in the meantime. They first appeared in answer to the court's order on October 30, 1939, and then moved the court to strike out the order, not on the ground that the motion was not supported by affidavit, but on the ground that all of the actions complained of took place either in South Carolina or in the Eastern District of North Carolina, and none of them took place in the Middle District of North Carolina where the Elmore suit was pending. These motions were overruled properly as has already been shown, and both parties offered testimony at the conclusion of which the judge took the matter under advisement until November 17. It was not until that date that the appellants moved to dismiss the proceeding because of the lack of an affidavit. Under these circumstances, it is obvious that the appellants waived the defect by their participation in the proceeding, even if it be supposed that the filing of an affidavit on October 7 was too late. See Sona v. Aluminum Castings Co., 6 Cir., 214 F. 936; In re Odum, 133 N.C. 250, 45 S.E. 569; In re Fletcher, 71 App. D.C. 108, 107 F.2d 666; 2 A.L.R. 236, note.

■ Moreover, a complete answer to the contention resides in the fact that the judge's order to show cause was not issued until both Nye and Elmore had been subpoenaed and had testified on separate occasions as to the occurrences preceding the attempted dismissal of the suit, and the judge had satisfied himself that reasonable grounds existed for the charge of contempt of court. Indeed the contempt proceeding was precipitated by a motion of the defendants filed in the death case on August 29, 1939, to dismiss that action because the estate of the deceased had been fully administered and Elmore, having been discharged as administrator, was no longer qualified to press the suit in that capacity. It was subsequent to this action that Elmore's attorney petitioned the court to cite the appellants for contempt and the proceedings leading to the judgment were taken. Manifestly the citation for contempt was not issued without proper foundation, and the charge was not prosecuted without due notice to the accused.

■ There can be no question that the District Judge was justified upon his finding of facts in concluding that the appellants' conduct amounted to contempt of court, in that they placed Elmore completely under their domination and control and procured from him, while his will was subject to theirs, the letter designed to prevent the trial of the death case upon its merits. Many adjudications of contempt from improper interference with jurors, witnesses or officials of the court in the course of litigation are found in the books; and precedents are not lacking of contemptuous conduct that affected even more vitally the administration of justice by interfering with the litigants themselves in the prosecution of claims in courts of justice.

An example is found in the State of North Carolina itself in Snow v. Hawkes, 183 N.C. 365, 111 S.E. 621, 23 A.L.R. 183, in which the plaintiff in a seduction suit was induced by threat of imprisonment by the father of the defendant to withdraw his suit. Threats of retaliation in case a plaintiff persisted in his suit were held contemptuous in Wilson v. Irwin, 144 Ky. 311, 138 S.W. 373, 42 L.R.A.,N.S., 722; Turk v. State, 123 Ark. 341, 185 S.W. 472. In the latter case the court said (123 Ark. page 346, 185 S.W. page 473): "It is universally held that intimidating a witness and preventing his appearance at court or procuring him to absent himself from the trial is a contempt of court. Preventing the appearance of a litigant in court for the prosecution of a suit brought to enforce a right by intimidation and threats is such an obstruction of judicial procedure as renders absolutely worthless all process of the court which is instituted for the enforcement and protection of the rights and the redress and prevention of wrongs of the litigants. It destroys the dignity and power of the court and brings the administration of justice into disrepute."

See, also, Whittem v. State, 36 Ind. 196; Sharland v. Sharland, 1 Times L.R. 492; Bromilow v. Phillips, 1892, 40 Week.Rep. 220; Smith v. Lakeman, [1856] 26 L.J. Ch.,N.S., 305; Re Muloch, [1864] 33 L.J.

---

In re Fletcher, 71 App.D.C. 108, 107 F. 2d 666, in which it was held that an affidavit is not necessary in contempt proceedings under 28 U.S.C.A. § 385, although prescribed by the statute in proceedings under § 386.

Prob.,N.S., 205; Webster v. Bakewell, [1916] 85 L.J.Ch.,N.S., 326.

No valid distinction in law exists between cases of this sort, in which the litigant's freedom of action was obstructed by threats and physical compulsion, and the instant case of undue influence and pressure equally effective in restraining the litigant from the assertion of a valuable claim in a court of justice. The obstruction of the administration of justice which stigmatizes the act as contempt of court is found in all of them.

The record in the instant case shows that pending the appeal Elmore, administrator, as plaintiff in the death case, voluntarily submitted to a judgment of non suit. On this account the appellants say that he indicated that he did not wish to push his case any further, and hence there is no substance in the supposed invasion of his rights which the contempt proceedings were instituted to protect. The brief of the appellant, however, admits that the non suit may have been taken by Elmore in consideration of a payment to him; and in the argument it transpired that he was in fact paid a substantial sum for the dismissal of the case. The contention serves only to emphasize the propriety and necessity of the action taken by the District Court.

Affirmed.