**DUELL v. DUELL.**

No. 9699.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 23, 1948.

Decided May 16, 1949.

Mr. Milton V. Freeman, Washington, D. C., with whom Messrs. Thurman Arnold, Harry L. Ryan, Jr., and Roger J. Whiteford, Washington, D. C., were on the brief, for appellant.

Mr. Joseph G. Dondero, Washington, D. C., with whom Messrs. C. F. Rothenburg and Charles D. Hamel, Washington, D. C., were on the brief, for appellee.

Before STEPHENS, Chief Judge and WILBUR K. MILLER and PROCTOR, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Charles H. Duell, Jr., appeals from a judgment of the United States District Court for the District of Columbia which, because he had been held in contempt of that court, struck his answer from the record and awarded judgment against him for $794,762.50, as though he were in default. The action was taken in a suit brought by his former wife in 1942 for sums alleged to be due under the terms of a separate maintenance contract which had been executed in 1923. The agreement was that he should pay her $1,500 per month for life and, in addition, $50,000 in ten equal monthly instalments; provided, however, if his worth and income were, respectively, less than three times the lump sum and the monthly payments, those payments should be reduced accordingly.

Among a number of defenses, his answer pleaded that he had not enjoyed sufficient income to require him to make further payments under the contract. The case was referred to the court's auditor to determine the appellant's worth and annual income.

On June 9, 1943, Duell appeared before the auditor, without counsel, and submitted to examination. He was questioned concerning his income year by year from 1924 to 1943. During that period, he said, his income had not been large enough to require him to file federal income tax returns except in the years 1936, 1941 and 1942, and submitted to the auditor copies of his federal returns for the last two of the three years for which returns had been made. He was ordered to file copies of all income tax returns, a "breakdown" of his expenditures for 1941 and 1942, and the books and records of the Brisbane Box Corporation, of which he was president. After a number of continuances, the hearing was reconvened on February 27, 1945. Duell did not attend but his counsel explained his absence and filed a copy of his income tax return for 1936. There was filed a letter from the Brisbane company's accountants advising that from its organization in 1935 to June 30, 1942, the corporation had claimed deductions for compensation paid to Duell only for the last two fiscal years in the period mentioned. There was also presented a letter from the secretary of the corporation declining to permit Duell to borrow its books and records and pointing out that since September, 1943, he had had no connection with the company.

Pursuant to the appellee's motion, on November 9, 1945, the court

"* * * Ordered, that the defendant, Charles H. Duell, Jr., personally appear on a day or days to be fixed by the Auditor to be further examined * * * and the defendant is further

"Ordered, to submit to the Auditor whatever records, documents or other data deemed necessary by the Auditor * * *."

The parties agreed upon February 20, 1946, as the date of the hearing. Duell did not attend but his counsel was present and attempted to explain his absence. The auditor thereupon reported to the court that "Since the order of reference could not be executed without taking the testimony of the defendant", he had closed the hearing. Mrs. Duell then moved that the appellant be held in contempt and pursuant to that motion, and on March 27, 1946, the District Court adjudged that Duell was in contempt and committed him to jail for thirty days. He has not been apprehended because of his absence from the District of Columbia.

On June 14, 1947, Duell's counsel took his deposition in New York, at which taking appellee's counsel cross-examined. When the case came on for hearing on the merits on June 16, 1947, the trial judge said:

"On March 27, 1946, this court adjudicated the defendant in contempt for failing to obey the order of this court dated November 9, 1945. The defendant has not purged himself of that contempt, and he is still in contempt. The case has come on for trial.

"Under the circumstances, the Court will strike from the record his answer, and the case will be proceeded with as a case of default."

So the appellant's answer was stricken and the appellee was awarded judgment against him for $794,762.50, together with costs.

The appellant contends the contempt order was void on its face and says the District Court erred in striking his answer and entering judgment as though by default. The appellee agrees that "The fundamental issue involved * * * is whether * * * the District Court * * * erred in striking the appellant's answer from the record and in proceeding with the case as in a case of default."

If the contempt order was invalid, then, for that reason if for no other, it was error to strike the answer and to enter a default judgment. Our consideration of the order's validity is facilitated by the agreement of the parties [1] that the proceeding here was for civil contempt.

A commitment for civil contempt is intended, not to punish, but to coerce the defendant. Since he can discharge himself by doing what he had previously refused to do, it is said he carries the key to his prison in his own pocket.[2] On the other hand, a sentence for criminal contempt is not intended to coerce. It is pure punishment to vindicate the court's authority and dignity, and it cannot be ended or shortened by any act of the defendant.

We agree with the parties that the contempt proceeding in this case was civil in character, for it was not "* * * a proceeding with the court, or, more properly the Government, on one side and the defendants on the other. On the contrary, the contempt proceedings were instituted, entitled, tried, and up to the moment of sentence treated as a part of the original cause * * *."[3]

Since "* * * imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was

---

[1] "It cannot be questioned that the proceeding in the instant case was for a civil contempt."—Appellant's brief.
"* * * The order which was promulgated by the Court pursuant to these civil contempt proceedings was also wholly civil in character."—Appellee's brief.

[2] In re Nevitt, 8 Cir., 1902, 117 F. 448, 461.

[3] Gompers v. Bucks Stove & Range Co., 1911, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.,N.S., 874, in which the Supreme Court also said, at pages 444 and 445, 31 S.Ct. at page 499:
"* * * Proceedings for civil contempt are between the original parties and are instituted and tried as a part of the main cause. But on the other hand, proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause."

mandatory in its character", it has been authoritatively said that "The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order." It necessarily follows that, if the order of commitment furnishes the defendant no key and "If * * * the sentence was wholly punitive, it could have been properly imposed only in a proceeding instituted and tried as for criminal contempt."[4]

The appellant contends, as we have said, that the order of which he complains is an unqualified commitment to jail for thirty days and provides no way by which he may unlock the door of his prison by doing the thing which he had been ordered to do. Whether this contention is sound depends, of course, upon the meaning of the order of commitment, which we reproduce:

"This matter having come on for hearing upon the motion filed herein on March 11, 1946, to adjudicate defendant in contempt, it is by the Court this 27th day of March, 1946

"Adjudged and ordered that the defendant, Charles H. Duell Jr., is in contempt of the Court because of his failure to have obeyed the order of November 9, 1945, in the above-entitled cause, and that the United States Marshal in and for the District of Columbia is hereby directed to take into his custody the person of the defendant, Charles H. Duell, Jr., and commit him to the Washington Asylum and Jail for a period of Thirty days or until such earlier time as he shall purge himself of his contempt by paying to the plaintiff or her attorney of record the sum of ...... or until further order of the Court hereon."

Consideration of this order is somewhat easier when it is understood that it was prepared by filling in the blanks of a printed form of commitment for contempt which is in general use in the District Court in cases where husbands have failed to pay alimony awarded by the court. Being designed for such use in civil contempt proceedings, the form appropriately hands to the defendant the key to his prison which he may use when he pays to his wife or her attorney the designated sum. The form was not appropriate for use in this case, however, as the appellant could not have purged himself of contempt by paying a sum of money, but only by appearing before the auditor and submitting the required data. Yet the form was used, and the blank space in it for the insertion of a definite sum to be paid by way of purging was not filled. The result is the order committed Duell for thirty days or "until such earlier time as he shall purge himself of such contempt" by paying nothing to the plaintiff or her attorney. The attempted qualification is quite meaningless and the words which follow the committing language do not condition the absolute, unqualified sentence of thirty days. The same is true of the closing words of the printed form, "or until further order of the Court hereon", for those words show that the court, not the defendant, was carrying the key. It is generally said that in civil contempt proceedings " * * * compliance with the order avoids the punishment",[5] and not at all that compliance with the order may move the court to enter a further order vacating the commitment.

The record shows the unconditional nature of Duell's sentence to have been recognized by the appellee and by the court itself. Duell petitioned the court to modify the order by including in it language which would permit him to free himself from the sentence by appearing in person before the auditor. His petition was vigorously opposed by the appellee and, as it was not granted, it was in effect denied by the court. Indeed, the District Court clearly indicated that the order was absolute and furnished Duell no key, and that the court alone carried the key, for it announced that no such petition would be entertained " * * * unless and until the defendant personally appeared in

[4] The quotations in this paragraph are from Gompers v. Bucks Stove & Range Co., supra.

[5] Doyle v. London Guarantee and Accident Co., Ltd., 1907, 204 U.S. 599, 607, 27 S.Ct. 313, 315, 51 L.Ed. 641.

open court with an explanation at which time a hearing would be afforded him".

■ While we do not condone the conduct of the appellant, it seems clear to us that the court imposed a sentence which was wholly punitive and we therefore hold, in the language of the Supreme Court, "* * * it could have been properly imposed only in a proceeding instituted and tried as for criminal contempt."[6] As was said in the Gompers case, 221 U.S. at page 449, 31 S.Ct. at page 501, "The result was as fundamentally erroneous as if in an action of 'A. vs. B. for assault and battery,' the judgment entered had been that the defendant be confined in prison for twelve months." It follows that it was error to strike the appellant's answer and to render judgment against him as though by default.

■ The court's action in striking the answer and rendering a default judgment was erroneous for the further reason that civil contempt may not be punished in that fashion unless it grows out of a defendant's failure to produce, when ordered to do so, material evidence in his possession or under his control. In Hovey v. Elliott, 1897, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215, in a careful and exhaustively analytical opinion, the Supreme Court held that to punish for contempt by striking an answer from the files and rendering judgment as by default is an unconstitutional denial of due process of law.

This case is, in our view, readily distinguishable from Hammond Packing Company v. State of Arkansas, 1909, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530, 15 Ann. Cas. 645, upon which the appellee relies heavily as embracing facts similar to those of the present case and as, therefore, controlling here. The Hovey case holds it is a denial of due process to strip a defendant of his defenses as punishment for contempt. The Hammond opinion does not modify that rule; its holding is that, when a defendant has suppressed or failed to produce relevant evidence in his pos-

session which he has been ordered to produce, a presumption arises as to the bad faith and untruth of his answer which justifies striking it from the record and rendering judgment as though by default.

■ In the case before us it does not appear that Duell suppressed or failed to produce material evidence in his possession which the auditor had ordered him to produce. In fact the record does not reveal what documents, data or information the auditor "deemed necessary" under the order of November 9, 1945. To be sure, in 1943 the then auditor wanted copies of income tax returns, the books and records of the Brisbane Box Corporation, and a "breakdown" of Duell's expenditures for 1941 and 1942. Perhaps it may be inferred that his successor wanted the same information at the hearing held pursuant to the order of November 9, 1945. That was the order which Duell was held to have disobeyed. Under the Hammond case, however, his answer could be stricken only if it appeared that he had the required evidence in his possession or under his control. But the copies of his income tax returns were furnished, and there was uncontradicted proof that the books and records of the Brisbane Box Corporation were neither in his possession nor under his control. Nor does it appear affirmatively in the record that Duell had any other material matter which was not submitted to the auditor. This being true, the Hammond case has no application here and the basic rule of the Hovey case comes into play.

■ The appellee's final contention is that the adjudication of contempt entered on March 27, 1946, was a final order from which an appeal could be taken only within three months after its date. This appeal was not taken within that period, but was seasonably filed after the entry of the default judgment. It is thoroughly settled that an order punishing for civil contempt is interlocutory and reviewable upon appeal taken from the subsequent final judgment; and that in criminal contempt the

[6] Gompers v. Bucks Stove & Range Co., 221 U.S. at page 444, 31 S.Ct. at page 499.

order of punishment is itself considered a final order, appealable as is any other criminal case. McCrone v. United States, 1939, 307 U.S. 61, 50 S.Ct. 685, 83 L.Ed. 1108; Fox v. Capital Company, 1936, 299 U.S. 105, 57 S.Ct. 57, 81 L.Ed. 67; In re Merchants' Stock and Grain Company, 1912, 223 U.S. 639, 32 S.Ct. 339, 56 L.Ed. 584; Doyle v. London Guarantee and Accident Company, Ltd., 1907, 204 U.S. 599, 27 S.Ct. 313, 51 L.Ed. 641.

The contempt order here involved was, as the parties agree, entered pursuant to civil contempt proceedings. The importance of that fact is shown by the following language used by the Supreme Court in the Gompers case, 221 U.S. at page 448, 31 S.Ct. at page 500:

"* * * both parties treated this as a proceeding which was a part of the original equity cause. In case of doubt this might, of itself, justify a determination of the question in accordance with the mutual understanding of the parties, and the procedure adopted by them."

⬛ Measured by all the standards in the carefully prepared Gompers opinion, the proceeding in the present case was civil, not criminal, in character. It was entitled, instituted and conducted as collateral to civil litigation. It may be noted, moreover, that in addition to the tests of the Gompers opinion which unequivocally show this to have been a civil proceeding, the procedure which led to Duell's sentence completely failed to satisfy the requirements of Rule 42(b) of the Federal Rules of Criminal Procedure,[7] which must be followed in the prosecution of any criminal contempt unless, as provided in paragraph (a) of the Rule, "the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court." The trial judge here neither saw nor heard Duell's conduct which was held to constitute contempt and it did not occur in the actual presence of the court.

In the Gompers case, pursuant to the petition of Bucks Stove & Range Company filed in a pending civil suit, the court found Gompers and others guilty of contempt for disobeying an injunction and entered an order of commitment which was unqualified and contained no provision for the release of the prisoners should they purge themselves of contempt. The order was therefore criminal in form, just as is the order in the case before us. The appeal in the Gompers case, however, was from a final judgment on the merits, and the Supreme Court reviewed the contempt order and directed that it be set aside. The only factual difference between the Gompers case and this case is that Gompers and his associates were held in contempt for the affirmative act of doing what the court had forbidden them to do, while here Duell was held in contempt for not doing what the court had ordered him to do. The difference is not a distinguishing one, but serves to emphasize the fact that in this proceeding the only proper order would have been coercive in form.

The recent case of Penfield Company v. Securities and Exchange Commission, 1947, 330 U.S. 585, 67 S.Ct. 918, 91 L.Ed. 1117, follows the Gompers decision. That case was before the Ninth Circuit sub nom. Securities and Exchange Commission v. Penfield Company, 1946, 157 F.2d 65, 66. The Securities and Exchange Commission applied to the district court for an order enforcing its subpoena duces tecum addressed to one Young, an officer of Penfield, requiring him to produce certain books of the corporation. After a hearing the court ordered Young to produce the books. When he persisted in non-compliance, the Commission applied to the district court for a rule to show cause why he should not be adjudged in contempt. After a hearing the court adjudged Young to be in contempt but refused to grant any coercive relief and simply imposed on him a flat unconditional fine of $50.00, which he paid.

In the early portion of its opinion, the Court of Appeals for the Ninth Circuit said, "Young did not appeal from the order holding him in contempt. That de-

cision is final and the only question before us is the extent of the remedy to which the Commission is entitled." But it concluded its opinion by saying:

"The order imposing the fine is reversed and the case remanded to the district court for an order requiring Young's imprisonment to compel his obedience to the order to produce the documents in question. 'If he complies, or shows that compliance is impossible, he must be released, for his confinement is not as punishment for an offense of a public nature.' Parker v. United States, 1 Cir., 153 F.2d 66, 70 [163 A.L.R. 379]."

When the case reached the Supreme Court, that Court stated one of the questions as follows: " * * * whether that court [Circuit Court of Appeals] exceeded its authority in reversing the judgment which imposed the fine and in substituting a term of imprisonment conditioned on continuance of the contempt." [8] In the course of the opinion, the Supreme Court observed, "When the Circuit Court of Appeals substituted imprisonment for the fine, it put a civil remedy in the place of a criminal punishment",[9] and closed by saying:

"There is a difference of view among us whether the portion of the order of the Circuit Court of Appeals which set aside the unconditional fine of $50 imposed on Young is here for review. But if we assume that it is, a majority of the Court is of the opinion that the Circuit Court of Appeals was correct in setting it aside, since the fine was imposed in a civil contempt proceeding. See Gompers v. Bucks Stove & Range Co., supra." [10]

It is our view, therefore, that the erroneous framing of the order in this case as though for criminal contempt rendered it invalid as a commitment for civil contempt but did not thereby transform it into a criminal order for the purposes of appeal. We base that opinion on what we regard as the clear holdings of the Gompers and Penfield cases.

The judgment of the District Court will be set aside, as will its order striking the appellant's answer from the record, and the cause will be remanded with instructions to vacate the contempt order or to recast it in a form appropriate in a civil contempt proceeding.

Reversed.

STEPHENS, Chief Judge, concurring in the result in part, dissenting in part:

## I.

I agree that the default judgment entered against the appellant Duell should be set aside, but I reach this conclusion for reasons different from those stated in the majority opinion. The majority view is that Duell's answer was stricken and the default judgment entered against him as a penalty for contempt, and in this view Hovey v. Elliott, 1897, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215, is said to apply. That case held void a decree pro confesso entered against a defendant in another proceeding where the defendant's answer had been stricken and the decree entered as a penalty for his contempt in failing to obey an order to pay money into court. The Supreme Court held that this amounted to condemnation without hearing, that the power to punish for contempt could not properly, in view of the due process clause of the Constitution, be used to deny a defendant the right to defend his principal case on the merits.

The record in the instant case is as follows: On January 20, 1943, the trial court entered an order referring the case to an auditor to take testimony and to determine and report to the court Duell's annual gross income after deduction of taxes and interest for the period August 1, 1923, to the date of the order, and Duell's property and worth at January 1 of each year from January 1, 1925, to the date of the

---

[8] 330 U.S. at page 591, 67 S.Ct. at page 922.

[9] 330 U.S. at page 592, 67 S.Ct. at page 922.

[10] 330 U.S. at page 595, 67 S.Ct. at page 923.

order.[1] Pursuant to this order two hearings were held before the auditor, one on June 9, 1943, one on February 27, 1945. At the first of these Duell appeared without counsel and testified concerning his income since January 1, 1925. At this hearing he was requested to produce an income statement for 1936 and certain books and records and promised to do so. At the February 27 hearing Duell did not appear in person, but was represented by counsel who stated that he was in Florida and too ill to attend the hearing. On September 20, 1945, the auditor reported to the court that on August 30, 1945, he had required Mrs. Duell to show cause why a report should not be filed recommending dismissal of the proceedings before the auditor for want of prosecution and that she had answered that she was unable to proceed because of the absence of Duell from the jurisdiction; and the auditor returned the order of reference unexecuted, without prejudice to the right of Mrs. Duell to re-refer the matter at such time as she was able to produce testimony before the auditor touching the subject matter of the order of reference. On October 4, 1945, Mrs. Duell in writing moved the trial court to order Duell to appear before the auditor on a day certain to be further examined in order that the auditor might execute the court order of reference of January 20, 1943, and to produce documents, records and information which he had theretofore been ordered to produce by the auditor, and moved the court further that its order provide that in the event Duell failed to comply he be immediately adjudged in contempt of the court and committed therefor. On November 9, 1945, the trial court entered the following order:

The above entitled cause having come on for hearing on plaintiff's motion that the defendant be compelled to appear before the Court Auditor on a day certain to be further examined or be held in contempt, and arguments having been heard from counsel herein, it is by the Court this 9th day of November, 1945,

ORDERED, that plaintiff's motion is hereby granted and it is ORDERED, that the defendant, Charles H. Duell, Jr., personally appear on a day or days to be fixed by the Auditor to be further examined in order that the Auditor may execute the Court Order of Reference dated January 30 [sic], 1943, and the defendant is further ORDERED, to submit to the Auditor whatever records, documents or other data deemed necessary by the Auditor to execute the said Court Order.

Pursuant to a stipulation of counsel the auditor set February 20, 1946, for Duell's appearance. Duell failed to appear on that date. On March 11, 1946, Mrs. Duell in writing moved the court that Duell be adjudged guilty of contempt and committed therefor "because of his failure and refusal to comply with the various Court orders of reference herein, and his flat failure and refusal to appear at hearings before the Auditor set in accordance with orders of this Court." This motion was accompanied by a supporting affidavit which is set forth in the margin.[2] It is

---

[1] This order of January 20, 1943, is mistakenly referred to in subsequent portions of the record as an order of January 30.

[2] "Comes now Joseph Dondero, Esq., and C. F. Rothenburg, Esq., attorneys of record for the plaintiff herein and in support of the attached Motion upon oath do depose and say:

"(1) That the facts contained herein are within the personal knowledge of said deponents.

"(2) That on January 30 [sic], 1943, this Court referred the case to the Court Auditor (now deceased) to take testimony, determine and report to the Court the defendant's annual gross income. The pertinent portions of the Court order are set forth in paragraph 1 of the report of the recently appointed Auditor filed herein and dated September 19, 1945.

"(3) That defendant was examined by counsel at a hearing held before the said Auditor (now deceased) on June 9, 1943. At said hearing defendant declined to give clear and full details concerning his income even under questioning by the Auditor himself.

"(4) That the defendant was instructed by the Auditor to produce records, documents and other information bearing on his gross income and to appear subsequently for further examination.

"(5) That contrary to these instructions of the Auditor the defendant has done everything in his power to prevent himself from being further examined and

not contended that Duell did not receive notice of this motion, and that he did receive notice of it is evidenced by the fact that on March 21, 1946, he filed "Points and Authorities in Opposition to Motion to Adjudge Defendant in Contempt."[3] The so-called "Points and Authorities" are set forth in the margin.[4] On March 27, 1946, the trial court entered the following "Order of Adjudication and Commitment":

This matter having come on for hearing upon the motion filed herein on March 11, 1946, to adjudicate defendant in contempt, it is by the Court this 27th day of March, 1946

Adjudged and ordered that the defendant, Charles H. Duell Jr. is in contempt of the Court because of his failure to have obeyed the order of November 9, 1945, in the above-entitled cause, and that the United States Marshal in and for the District of Columbia is hereby directed to take into his custody the person of the defendant, Charles H. Duell Jr. and commit him to the Washington Asylum and Jail for a period of Thirty days or until such

has further refused to appear and produce the requested documents.

"(6) That defendant through his attorney has failed and refused to give the defendant's address even upon request of the Auditor.

"(7) That defendant has claimed that illness prevented his coming to Washington for a hearing although your deponents on information and belief state that said defendant was in Washington during various times during the period here in question and was registered at the Mayflower Hotel and appeared to be transacting business.

"(8) That the Court again on the 9th of November, 1945, re-referred the matter to the present Auditor, Fred J. Eden, for further hearing. At that time the Court observed that if the defendant should again fail and refuse to attend a scheduled hearing before the Auditor on a date certain set by the Auditor the Court would consider disciplinary action.

"(9) That deponents have done all in their power to bring the defendant before the Auditor in order that he may be further examined in accordance with the orders of reference.

"(10) That defendant steadily fails and refuses to appear before the Auditor; hence said Auditor is unable, as he states in his second report dated March 6, 1946, to execute the order of reference and make a full and final report to the Court in accordance therewith.

earlier time as he shall purge himself of his contempt by paying to the plaintiff or her attorney of record the sum of —— or until further order of the Court hereon.

I agree with the view of the majority that this was in legal effect an unqualified commitment to jail for thirty days. More than a year after the order of adjudication and commitment, to wit, on June 16, 1947, the trial judge in open court in the presence of counsel for Duell and Mrs. Duell made the following statement:

. . . On March 27, 1946, this court adjudicated the defendant in contempt for failing to obey the order of this court dated November 9, 1945. The defendant has not purged himself of that contempt, and he is still in contempt. The case has come on for trial. Under the circumstances, the Court will strike from the record his answer, and the case will be proceeded with as a case of default.

In a colloquy preceding this statement the trial court referred to Rule 37, Federal Rules of Civil Procedure, as pertinent to

"(11) That further reasons for this Motion are set forth in plaintiff's answer to rule to show cause attached to the Auditor's report of September 19, 1945, and the facts contained in the Auditor's report of March 6, 1946."

[3] It is to be noted further that a "Memorandum of Points and Authorities in Support of [Mrs. Duell's] Motion" of March 11, 1946, recites that Duell "is being notified of this Motion in accordance with the Federal Rules of Civil Procedure, Rule 5(b) F.R.C.P. Title 28 U. S.C. Sec. 385."

[4] "Comes now the defendant through his attorneys of record and, in opposition to the motion of plaintiff, advises the Court that, due to the pressure of other matters in which defendant has been engaged, it has been impossible for him to appear for testimony before the Auditor upon the occasions recently set by said Auditor for hearing.

"Defendant advises the Court that he has no intention of disregarding the order of the Court to give further testimony herein and refers the Court to the Report of the Auditor, dated the 6th of March, 1946, and the letter referred to therein in which defendant indicated that he proposed [sic] to come to Washington as soon as conditions permitted.

"In light of the foregoing the defendant respectfully submits that he should not be adjudged in contempt of the Order of Reference heretofore made by this Court as in plaintiff's motion prayed."

the refusal of a party to obey a court order.

Rule 53(d) (2), Federal Rules of Civil Procedure, provides that "The parties may procure the attendance of witnesses before the master by the issuance and service of subpoenas as provided in Rule 45. If without adequate excuse a witness fails to appear or give evidence, he may be punished as for a contempt and be subjected to the consequences, penalties, and remedies provided in Rules 37 and 45." Rule 53(a) provides that "As used in these rules the word 'master' includes . . . an auditor . . . ." Rule 37(d) provides that "If a party . . . wilfully fails to appear before the officer who is to take his deposition, after being served with a proper notice . . . the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party."

In view of the terms of these rules, of the court's reference to Rule 37, and in view especially of the fact that a penalty for the contempt, to wit, thirty days in jail, had, long prior to the time of striking the answer and entering the default judgment, been imposed, I think it not reasonably inferable that the court struck the answer and entered the default as a penalty for Duell's contempt. It is not to be concluded that the court was acting wrongfully, i. e., in violation of the rule of Hovey v. Elliott, supra, when the record supports a reasonable inference to the contrary. I think it reasonable to conclude that, in respect of Duell's failure to appear pursuant to its order, the court did two separate things, to wit (1) adjudicate Duell guilty of contempt—and impose a jail sentence upon him for that contempt; and (2) strike his answer and enter a default judgment against him. I discuss later in this opinion the propriety of the contempt adjudication and the question whether or not it should be set aside. With respect to the striking of the answer and the entering of the default judgment against Duell, this, except for the absence of motion and notice, upon which I comment below, would have been justified by Hammond Packing Co. v. Arkansas, 1909, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530, 15 Ann.Cas. 645. In that case the Packing Company, sued in an Arkansas state trial court under the Arkansas Anti-Trust Act of 1905, filed an answer denying the charges in the complaint against it, but refused when ordered to do so to produce either witnesses or records before a commission appointed to take testimony. Section 9 of the Anti-Trust Act provided that in case any officer, agent, employee, director or representative of a corporation should, in an action brought under the Act, fail, neglect or refuse, when subpoenaed to appear and testify or produce books, papers and documents, to do so, then the answer or other pleading filed by such corporation should on motion of the Attorney General or prosecuting attorney be stricken and judgment in the cause rendered against such corporation. Upon the Packing Company's refusal to produce witnesses and records, and upon motion of the Attorney General, the Arkansas trial court struck its answer and entered judgment against it and in favor of the State. The judgment was affirmed by the Supreme Court of Arkansas and the case then reached the Supreme Court of the United States on writ of error. The Supreme Court affirmed the lower court rulings, rejecting the contention of the Packing Company that the action of the trial court amounted to denial of due process in condemning it without a hearing. The theory of the decision was that under Section 9 of the Arkansas Anti-Trust Act, it was presumed, upon the Packing Company's failure to make a bona fide effort to comply with the trial court's order to produce witnesses and documents or to show inability to comply, that it had admitted that its defense lacked merit. The Court held that a judgment based upon such a presumption, properly created by the legislative branch of the State, was comparable to a default entered upon a failure to answer. The Court distinguished Hovey v. Elliott upon the ground that that case involved a denial of the right to defend

as mere punishment for contempt; this the Supreme Court said was denial of due process by refusal to hear. But it held, in view of Section 9 of the Arkansas Anti-Trust Act, that the presumption raised— by the failure of the Packing Company to produce witnesses and records—satisfied the due process clause of the Constitution.

Since, as I read the record in the instant case, the court struck Duell's answer and entered the default judgment not as a penalty for the contempt but in pursuance of the court's power under Rule 37(d), I think the instant case, in respect of the striking of the answer and the entering of the default judgment, parallels the Hammond Packing Co. case, not Hovey v. Elliott, and that the ruling of the majority that the default judgment be set aside because of the decision in Hovey v. Elliott is therefore not correct. Rule 37(d), Federal Rules of Civil Procedure, in substance parallels Section 9 of the Arkansas Anti-Trust Act.

I agree, however, that the default judgment must be set aside. Although under the doctrine of the Hammond Packing Co. case the presumption arose when Duell failed to appear that his defense lacked merit, this presumption could not, in view of the terms of Rule 37(d), be acted upon by the court by striking his answer and entering a default judgment except after motion and notice to Duell. The rule says in terms "the court *on motion and notice* may strike out all or any part of any pleading . . . or enter a judgment by default . . .." (Italics supplied) This requirement of motion and notice is a reflection of the due process clause of the Constitution. In the instant case the record shows no motion and notice in respect of striking the answer and entering the default judgment. On that account, but on that account only, in my view, the default judgment should be set aside. In the Hammond Packing Co. case, as above appears, there was a motion by the Attorney General for the striking of the Packing Company's answer and the entering of judgment against it—and apparently no question arose in the case as to an absence of notice. Accordingly in that case the action of the court in striking the answer and entering the default judgment was justified. In the instant case for lack of motion and notice it is not.

## II.

I disagree with the view of the majority that the judgment for contempt should be set aside as invalid. The majority view is that the proceeding resulting in the contempt judgment was civil in character, not criminal; that the contempt judgment, criminal in form, should have been civil, *i. e.*, coercive or remedial; and that it cannot stand as a criminal judgment because of lack of compliance with Rule 42(b), Federal Rules of Criminal Procedure. The reliance of the majority is largely upon the case of Gompers v. Bucks Stove & Range Co., 1911, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A., N.S., 874.

I think the standard for determining whether or not a contempt proceeding and judgment is civil or criminal is not now that announced in the Gompers case but the one stated in Nye v. United States, 1941, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172. In that case one Elmore brought an action in the United States District Court for the Middle District of North Carolina against the B. C. Remedy Company for the wrongful death of his son alleged to have resulted from the use of a medicine manufactured and sold by the Remedy Company. While the case was pending, Elmore wrote letters to the district judge and also to one Guthrie, Elmore's lawyer, asking that the case be dismissed. Guthrie asked the district judge to defer action upon the request for dismissal in order that he, Guthrie, might have time to investigate the reasons therefor. Deferment was granted and after an investigation Guthrie filed a motion for the issuance of an order to show cause against Nye as to why he should not be punished for contempt for obstructing the administration of justice. Such an order was issued and after a hearing thereon the trial court found that Nye had brought improper pressure upon Elmore to cause the dismissal of the action against the Remedy

Company and had caused divers and extended delays, and upon this finding the trial court adjudged Nye guilty of contempt and sentenced him to pay the costs of the contempt proceeding, to pay $500 to Guthrie, and to pay a fine of $500. Nye appealed to the Court of Appeals for the Fourth Circuit. In that court the United States was for the first time made a party. The court of appeals affirmed the contempt judgment. [113 F.2d 1006] On a writ of certiorari to the Supreme Court, that Court reversed. In the course of the discussion of the question whether or not the contempt was civil or criminal—one of the principal points in the case—the Court ruled:

> We do not think this was a case of civil contempt. We recently stated in *McCrone* v. *United States*, 307 U.S. 61, 64 [59 S.Ct. 685, 83 L.Ed. 1108], "While particular acts do not always readily lend themselves to classification as civil or criminal contempts, a contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public." The facts of this case do not meet that standard. *While the proceedings in the District Court were entitled in Elmore's action and the United States was not a party until the appeal, those circumstances though relevant (Gompers* v. *Bucks Stove & Range Co.*, 221 U.S. 418, 445–446) [31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A., N.S., 874] *are not conclusive as to the nature of the contempt*. The fact that Nye was ordered to pay the costs of the proceeding, including $500 to Guthrie, is also not decisive. As Mr. Justice Brandeis stated in *Union Tool Co.* v. *Wilson*, 259 U.S. 107, 110 [42 S.Ct. 427, 66 L.Ed. 848], *"Where a fine is imposed partly as compensation to the complainant and partly as punishment, the criminal feature of the order is dominant and fixes its character for purposes of review."* The order imposes unconditional fines payable to the United States. It awards no relief to a private suitor. The prayer for relief and the acts charged carry the criminal hallmark. Cf. *Gompers v. Bucks Stove & Range Co., supra*, p. 449 [31 S.Ct. at page 501, 55 L.Ed. 797, 34 L.R.A.,N.S., 874]. *They clearly do not reveal any purpose to punish for contempt "in aid of the adjudication sought in the principal suit."* *Lamb* v. *Cramer*, 285 U.S. 217, 220 [52 S.Ct. 315, 76 L.Ed. 715]. When there is added the "significant" fact (*Bessette* v. *W. B. Conkey Co.*, 194 U.S. 324, 329) [24 S.Ct. 665, 48 L.Ed. 997] that Nye and Mayers were strangers, not parties, to Elmore's action, there can be no reasonable doubt that the punitive character of the order was dominant. [Italics supplied] [313 U.S. at pages 42–43, 61 S.Ct. at pages 812, 813, 85 L.Ed. 1172.]

Within the standard thus set forth the adjudication and commitment in the instant case was, in my view, not civil. It was not remedial in character except incidentally, *i. e.*, to the extent that it might encourage Duell to respond to future court orders entered at the instance of Mrs. Duell. It was imposed because of Duell's disobedience of a court order and thus in vindication of the authority of the court. It prescribed a definite jail sentence. It left Duell no "key" whereby through his own conduct he could purge himself of the contempt. The adjudication and commitment was, I think, clearly criminal in character.

Under Rule 42(a), Federal Rules of Criminal Procedure, a criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. Rule 42(b) provides:

> DISPOSITION UPON NOTICE AND HEARING. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. . . . Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

The Federal Rules of Criminal Procedure became effective March 21, 1946. They govern all criminal proceedings thereafter commenced, but apply only "so far as just and practicable" to proceedings then pending. Rule 59. Mrs. Duell's motion and accompanying supporting affidavit were filed March 11, 1946. Since it would not be "just and practicable" to apply the procedural requirements of the rules to steps taken in advance of their effective date, Rule 42 technically speaking did not govern the contempt proceeding in the instant case. But the rule is substantially a restatement of previously existing law (Ex parte Terry, 1888, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405; Cooke v. United States, 1925, 267 U.S. 517, 534, 45 S.Ct. 390, 69 L.Ed. 767)

and of the procedure prescribed in 28 U.S.C. §§ 386-390 (1946) and 29 U.S.C. § 111 (1946). See the Notes to Rule 42. And it is true that it does not appear that all of the previously existing procedural requirements, reflected in the rule, were formally met in the proceeding leading up to the contempt judgment. It does not appear that there was a formal notice—stating the time and place of hearing, allowing· a reasonable time for the preparation of the defense and stating the essential facts constituting the criminal contempt charged and describing it as such—given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. But, as is demonstrated by the review of the record set forth above: Duell received notice of Mrs. Duell's motion of March 11, 1946, and by that motion and the accompanying affidavit was advised of the essential nature of the contempt charged, to wit, failure and refusal to comply with the various court orders of reference and failure and refusal to appear at hearings before the auditor set in accordance with orders of the court. Duell had a reasonable time to prepare to meet the contempt charged since his points and authorities in opposition to Mrs. Duell's motion were filed March 21, 1946, ten days subsequent to the filing of the motion, and the hearing on the motion was not until March 27, 1946. Since there was a hearing on the motion—as recited in the court's order of March 27—Duell was accorded an opportunity to be heard, although he chose to be absent. He was not entitled to a trial by jury because the acts of Congress under which a trial by jury is accorded as a matter of right in a contempt proceeding are the Act of March 23, 1932, 47 Stat. 72, 29 U.S.C. § 111 (1946) (Norris-LaGuardia Act), and the Act of October 15, 1914, 38 Stat. 738, 28 U.S.C. § 387 (1946) (Clayton Act). See paragraph 3, note to Subdivision (b), Rule 42. Since Duell had no right of jury trial and did receive notice of the contempt charged

and was advised of the nature thereof and was accorded a reasonable time within which to prepare to defend it and was given an opportunity to be heard, due process of law was satisfied in respect of the contempt judgment—as contrasted, for reasons pointed out above, with the default judgment. Therefore the departures from the formal requirements reflected by Rule 42(b) rendered the contempt judgment at most erroneous, not void.

The judgments of a judicial tribunal entered within its general authority to act, *i. e.*, entered in a case which is within the class of cases with which the tribunal is empowered to deal, entered in respect of a party over whom the court has power by virtue of his personal appearance or subjection to service of process, and entered in a case in which the claim set forth for action by the court is not obviously frivolous, are valid, not void, even though they may be erroneous. Binderup v. Pathé Exchange, 1923, 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308; Howat v. Kansas, 1922, 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550; Cooper v. Reynolds, U.S. 1870, 10 Wall. 308, 19 L.Ed. 931; McCann v. New York Stock Exchange, 2 Cir., 1935, 80 F.2d 211; Brougham v. Oceanic Steam Navigation Co., 2 Cir., 1913, 205 Fed. 857; Hughes v. Cuming, 1900, 165 N.Y. 91, 58 N.E. 794. Cf. De Benque v. United States, 1936, 66 App.D.C. 36, 85 F.2d 202, 106 A.L.R. 839. These jurisdictional requirements are all satisfied in the instant case. Section 268 of the Judicial Code, 28 U.S.C. § 385 (1946), empowers United States courts "to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority," and specifies as a contempt "the disobedience or resistance . . . by any party . . . to any lawful writ, process, order, rule, decree, or command of the said courts." Rule 53(d) (2), Federal Rules of Civil Procedure, referred to above, authorizes the punishment of a witness as for a contempt who without adequate excuse fails to appear. Duell had been served with process in the maintenance proceeding, and he filed points and authorities in the contempt proceeding, *i.e.*, appeared therein. Cer-

tainly the charge of contempt was not obviously frivolous. The contempt judgment being not void, but at the most erroneous, is binding upon Duell since he did not appeal from it within the time allowed by law. If a party made the subject of an erroneous but not void judgment desires to escape its effect he must appeal from it within the proper time; not so appealing he must obey it. Howat v. Kansas, supra. As ruled in Nye v. United States, supra, upon the faith of Union Tool Co. v. Wilson, 1922, 259 U.S. 107, 42 S.Ct. 427, 66 L.Ed. 848, when the criminal feature of a contempt order is dominant, that fixes its character for purposes of review. I have pointed out above that the adjudication and commitment for contempt in the instant case was criminal in character. Assuming, in view of the provision of Rule 59, Federal Rules of Criminal Procedure, above referred to, that it is "just and practicable" to apply the requirements for appeal of the Federal Rules of Criminal Procedure to the contempt judgment in the instant case as a proceeding pending at the time of the effective date of the rules (March 21, 1946), the appeal was not taken within time. Rule 37(a) (2) of the rules allows ten days after the entry of the judgment for the taking of an appeal. The contempt judgment was entered March 27, 1946; the appeal was not taken until September 5, 1947.[5] But if the requirements for appeal of the Federal Rules of Criminal Procedure are not properly applicable to the contempt judgment, then those of the Criminal Appeals Rules, promulgated by the Supreme Court May 7, 1934, effective September 1, 1934, 292 U.S. 661, are applicable; and thereunder the appeal from the contempt judgment in the instant case was not taken in time. Rule 3 of such rules requires that an appeal from a criminal judgment shall be taken (with an exception not here pertinent) within five days after the entry of the judgment of conviction.

The contempt judgment not being void and no appeal having been taken from it within proper time, this court has no authority to reverse it; it must stand as entered.

For its view that "the erroneous framing of the order in this case as though for criminal contempt rendered it invalid as a commitment for civil contempt but did not thereby transform it into a criminal order for the purposes of appeal," the majority relies upon Penfield Co. v. Securities & Exchange Commission, 1947, 330 U.S. 585, 67 S.Ct. 918, 91 L.Ed. 1117. I think, as pointed out above, that the adjudication and commitment in the instant case was clearly criminal in character, not civil. But, accepting arguendo the majority position as quoted, I think that the Penfield case does not support it. In the Penfield case the Commission, in the course of an investigation which it had ordered to determine whether the Penfield Company had violated the Securities Act of 1933 in the sale of stock or other securities, directed a subpoena duces tecum to one Young as an officer of the Company, requiring him to produce certain documents. Young refused. The Commission then filed an application with the United States District Court for the Southern District of California for an order enforcing the subpoena. After a hearing the court ordered Young, as an officer of the Company, to produce them. Young again refused. The Commission then applied to the district court for a rule to show cause why Young should not be adjudged in contempt, and, after a hearing, the district court adjudged him to be in contempt. It refused, however, to grant the coercive relief requested by the Commission, designed to force Young to produce the documents. Instead, it imposed upon him an unconditional fine of $50 which he paid. The Commission appealed to the Court of Appeals for the Ninth Circuit and there challenged as error the action of the district court in imposing the flat fine instead of a remedial

---

[5] The rule making power of the Supreme Court with respect to criminal proceedings was extended to proceedings to punish for criminal contempt of court by the Act of November 21, 1941, 55 Stat. 779, 18 U.S.C. § 689 (1946).

penalty. The court of appeals reversed, holding that the district court erred in imposing a fine, and directed that Young be ordered imprisoned until he produced the documents. [9 Cir., 157 F.2d 65.] The case reached the Supreme Court on a petition for a writ of certiorari filed by the Company and Young. Since no judgment in the district court or in the court of appeals had been rendered against the Company, and since no relief was sought by or against the Company in the Supreme Court, the writ was dismissed as to the Company and considered only as to Young. Preliminary to discussing the merits of the case the Court said that where a judgment of contempt is embodied in a single order which contains an admixture of criminal and civil elements, the criminal aspect of the order fixes its character for purposes of procedure on review (thus reiterating the statement to similar effect quoted above from the Nye case). But it said that in the Penfield case there was no such admixture because the district court refused to grant any remedial (*i. e.*, civil) relief to the Commission. The Court pointed out that the denial of the remedial relief sought by the Commission in the district court was the ground of its appeal to the court of appeals; that the order of denial of the remedial relief sought, being final, was appealable; and that the right to appeal from that order was not dependent upon an appeal from the imposition of the fine. The ultimate issue in the case, therefore, was whether or not the Commission was entitled to the remedial relief which it had sought in the district court and which was granted it by the court of appeals. In determining this issue the Court considered first whether or not the court of appeals erred in granting the Commission remedial relief by directing that Young be required to produce the documents, and second whether that court exceeded its authority in reversing the judgment imposing the fine and in substituting a term of imprisonment remedial in character, *i. e.*, conditioned on continuance of the contempt. The Court decided both of these questions in the negative. It held on the ultimate issue that the Commission was entitled to the

remedial relief which it had been denied by the district court, and that the refusal of the district court to grant such relief was an abuse of discretion. The Court pointed out that when the court of appeals substituted imprisonment for the fine, it put a civil remedy in the place of a criminal punishment because the imprisonment authorized would be suffered only if the documents were not produced; but that on the other hand the flat fine imposed by the district court was unconditional, not coercive relief such as the Commission sought, *i. e.*, it was solely and exclusively punitive in character. It was noted in the opinion that Young did not appeal to the court of appeals from the judgment holding him in contempt and subjecting him to a fine. Young maintained, however, in the Supreme Court that once the fine had been imposed and paid the jurisdiction of the court of appeals was exhausted, and that it was therefore without authority to substitute another penalty or to add to the one already imposed and satisfied. But the Court rejected this contention upon the ground that the statutory limitation in Section 268 of the Judicial Code, 28 U.S.C. § 385 (1946), of "fine or imprisonment" did not preclude a court from imposing a fine as a punitive measure and imprisonment as a remedial measure, or vice versa.

Young raised objections in the Supreme Court that went to the merits of the judgment of contempt. The Court said that these had been considered and determined against him by the district court and ruled that "Since he did not appeal from that adverse judgment, he is precluded from renewing the objections at this stage...." 330 U.S. at page 594, 67 S.Ct. at page 923, 91 L.Ed. 1117.

In the final paragraph of its opinion the Court said that there was a difference of view among the members of the Court as to whether that portion of the order of the court of appeals which set aside the district court's unconditional fine of $50 imposed upon Young was before the Court for review. It stated, however, that if it be assumed that that portion of the order was before the Court for review, a majority was of the opinion that the court of appeals

was correct in setting aside the district court's unconditional fine since it was imposed in a civil contempt proceeding. I think it clear that all that is meant by this is a reiteration of the proposition stated by the Court earlier in the opinion, and referred to above, that the statutory limitation in Section 268 of the Judicial Code of "fine or imprisonment" did not preclude a court from imposing a fine as a punitive measure and imprisonment as a remedial measure, or vice versa, and that, therefore, the court of appeals could properly set the fine aside and substitute remedial relief.

It is to be noted that nothing in the opinion in the Penfield case indicates that the Court was of the view that the judgment of contempt subjecting Young to a fine was void. As to the Commission it held that the imposition of the fine was erroneous for the reason that what the Commission sought before the district court was remedial relief and that it was entitled to that relief, and that, therefore, the district court's order denying it that relief should be set aside. As to Young the Court did not rule that the contempt judgment subjecting him to a fine—which it had characterized, as above pointed out, as strictly criminal in character—was *either* void or erroneous. Young had not appealed from the contempt judgment and the Court as above shown expressly said that since he did not appeal from the adverse judgment entered by the district court against him, he was precluded from urging objections that went to its merits. Thus the Court did not reach the question whether, as to Young, the contempt judgment was either void or erroneous. The holding in the Penfield case, therefore, in effect supports the position which I take in this opinion because it does not treat the contempt judgment as void, as to Young, but only, in its imposition of a fine upon Young, erroneous as to the Commission, and it does hold that for a failure to appeal from the contempt judgment, criminal in character, Young was disabled to attack it.

The fact that the Court in the Penfield case justified the court of appeals in setting aside the imposition of the fine and substituting for it remedial relief to the Commission does not, in my view, authorize this court in the instant case to set aside the contempt judgment against Duell. In the Penfield case it was not Young who was attacking the imposition of the fine upon the ground that the relief should have been remedial rather than punitive; it was at the Commission's instance that the fine was set aside as not the kind of relief to which the Commission was entitled. Young had not even appealed from the contempt judgment. But in the instant case it is the person in the position of Young, to wit, Duell, who is attempting to attack the contempt judgment and to have it set aside. But, like Young in the Penfield case, he did not appeal from it. Therefore he is bound by it. This court cannot reverse it because it is not before this court by virtue of an appeal timely taken.

The majority in the instant case appears to justify its action in setting aside the contempt judgment upon the theory that in Gompers v. Bucks Stove & Range Co., 1911, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.,N.S., 874, the appeal was from a final judgment on the merits, *i. e.*, from an injunction against a boycott, and that the Supreme Court nevertheless in disposing of that appeal reviewed a contempt judgment entered for violation of the injunction and directed that the contempt judgment be set aside. In this view the majority rules that since in the instant case the appeal, timely taken from the default judgment in the maintenance suit, is before this court, it can in the course of reviewing that judgment review also the contempt adjudication. But as I read the Gompers case and the related cases referred to therein, there were two separate proceedings—in one of which there was an appeal from the injunction against the boycott and in the other of which there was an appeal from the contempt judgment entered because of a disobedience of the injunction. As I read the Gompers case and the related cases, the contempt judgment was not reviewed as a part of the appeal from the injunction but in the independent appeal from the contempt judgment itself. See: American Federation of Labor v. Buck's Stove & R. Co., March 11, 1909, 33 App.

D.C. 83, 32 L.R.A.,N.S., 748; Buck's Stove & Range Co. v. American Federation of Labor, American Federation of Labor v. Buck's Stove & Range Co., 1911, 219 U.S. 581, 31 S.Ct. 472, 55 L.Ed. 345—involving the injunction proceeding. Gompers v. Buck's Stove & R. Co., Nov. 2, 1909, 33 App.D.C. 516; Gompers v. Bucks Stove & Range Co., May 15, 1911, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A., N.S., 874—involving the contempt proceeding. I think, therefore, that the Gompers case does not justify the majority view that in the instant case the court can, in the course of reviewing the default judgment in the maintenance suit, review also the contempt adjudication. Moreover, as above pointed out, both the Nye and Penfield cases hold that the criminal aspect of a contempt judgment fixes its character for purposes of review. No independent appeal was taken in the instant case from the criminal contempt judgment.

I conclude, for the reasons set forth above, that the default judgment in the instant case should be set aside but that the contempt judgment should stand.